691 So.2d 242 (1997)
Lynn Beaucoudray, Wife of/and James Edward KELTY, Jr., et al.
v.
Fred O. BRUMFIELD, M.D., et al.
No. 96-CA-0869.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1997.
Writ Denied May 16, 1997.
*244 Kenneth V. Ward, Jr., Metairie, for Appellees.
George E. Cain, Kenneth A. Mayeaux, Frilot, Partridge, Kohnke & Clements, L.C., New Orleans, for Appellant Louisiana Patient's Compensation Fund.
Larry M. Roedel, David A. Woolridge, Jr., Roedel, Parsons, Hill & Koch, Baton Rouge, for Appellants The Louisiana Patient's Compensation Fund Oversight Board and its Claims Committee.
Before CIACCIO, PLOTKIN and LANDRIEU, JJ.
LANDRIEU, Judge.
This protracted litigation[1] arises out of injuries sustained at birth by Anne Mary Kelty. This appeal specifically involves the reimbursement to Anne Mary's parents, Lynn and Jim Kelty, for custodial care and related benefits under La.Rev.Stat. 40:1299.43. The trial judge modified, in part, the decision of the Louisiana Patient's Compensation Fund Oversight Board (Board), and the Louisiana Patient's Compensation Fund (Fund) appeals. We affirm as amended.

FACTS
On June 18, 1978, Anne Mary was born at Southern Baptist Hospital after Dr. Fred O. Brumfield, a qualified health care provider, induced labor by injecting Mrs. Lynn Kelty with Pitocin. Mrs. Kelty's placenta burst, the blood drained out of the unborn child, and Anne Mary was delivered via an emergency caesarian section. Because she was oxygen deprived, she was born with serious brain damage and is severely mentally and physically handicapped.
The Keltys settled with Dr. Brumfield and Southern Baptist Hospital for $100,000.00, their maximum liability under La. Rev.Stat. 40:1299.42(B)(2). The parties stipulated that Anne Mary's medical expenses exceeded $500,000.00, the maximum recoverable under La.Rev.Stat. 40:1299.42(B), and the Civil District Court in New Orleans entered judgment against the Fund for that amount.
After lengthy proceedings, the Louisiana Supreme Court held that the Keltys were also entitled to future care and related medical benefits under La.Rev.Stat. 40:1299.43. Kelty v. Brumfield, 93-1142 (La.2/25/94), 633 So.2d 1210. The case was remanded to the Claims Committee of the Board which held an administrative hearing on July 7, 1994. Its Findings and Conclusions were adopted by the Board as its Final Decision. The Keltys were awarded $1,666,613.38 which included payment for Anne Mary's custodial care, past and future.
The trial court subsequently remanded the case to the Board to take additional evidence *245 regarding reimbursement to the Keltys for custodial care benefits. After another administrative hearing, an Amended Final Decision was rendered on September 7, 1995, in which the custodial care benefits were not modified.
The Keltys filed a petition for review in Civil District Court arguing that the Board's decision was manifestly erroneous and an abuse of discretion. Specifically, they sought damages as follows:
1) Lynn Kelty be paid for 24 hours per day custodial care from July 28, 1978, through December, 1994;
2) Jim Kelty, Anne Mary's father, be paid for 16 hours per day for custodial care from July 28, 1978, through December, 1994;
3) Custodial care be assessed at $31.00 per hour with the Fund receiving credit for amounts already paid at $6.00 per hour;
4) Legal interest be paid from July 28, 1978, the date of the malpractice, or, in the alternative, from April 22, 1983, the date the complaint was filed; and
5) Reasonable attorney's fees be awarded.
The trial court rendered a judgment on January 22, 1996, which found the payment of $6.00 per hour manifestly erroneous. The trial court modified that award with interest accruing from April 22, 1983, and assigned costs, including expert fees of $2,588.00. The January 22, 1996, judgment was again modified upon rehearing to increase the award. Both the Board and the Fund appealed the trial court's decision. They assert the following assignments of error:
(1) The trial court did not apply the appropriate standard of review to the Board's decision;
(2) The trial court improperly modified the Board's final decision as to the amount awarded for past custodial care;
(3) The trial court improperly modified the Board's final decision as to the date from which the pre-judgment interest should accrue; and
(4) The trial court improperly awarded expert fees.
The appellate court is to review the decision of the trial court under the manifest error rule. Stobart v. State, through Department of Transportation and Development, 617 So.2d 880 (La.1993). However, the award for custodial care, which is special damages, is reviewed under a different standard. General damages are reviewed under the abuse of discretion standard. Reck v. Stevens, 373 So.2d 498 (La.1979). But the discretion afforded the trier of fact to assess special damages is narrower or more limited than the discretion to assess general damages. Eddy v. Litton, 586 So.2d 670 (La. App. 2d Cir.1991), writ denied, 590 So.2d 1203 (La.1992).

ASSIGNMENT OF ERRORS NO. 1 AND 2
Future medical care and related benefits, such as custodial care, are authorized by La.Rev.Stat. 40:1299.43(B)(1). The Board has exclusive jurisdiction in initial decision making or supervision over medical and related claims, "subject only to court review of the agency's actions pursuant to well established principles of judicial review." Kelty v. Brumfield, 93-1142 (La.2/25/94), 633 So.2d 1210, 1218-1219. The Fund alleges that the trial court did not adhere to these "principles of judicial review." Specifically, the Fund claims the trial court did not consider the record on the whole "in the light most favorable to supporting the Board's Final Decision" and improperly substituted its own evaluation of the credibility of the witnesses.
The trial court's authority to review the Board's decision arises from the Administrative Procedure Act.[2] The process for judicial review is controlled by La.Rev.Stat. 49:964 which states, in pertinent part:
A. A person who is aggrieved by a final decision or order in an adjudication proceeding is entitled to judicial review ...
B. Proceedings for review may be instituted by filing a petition in the district court of the parish where the agency is *246 located ...[3]
G.... The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decision are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge of [sic] the credibility by first-hand observation of the demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of the credibility issues. (Emphasis added.)
In applying La.Rev.Stat. 9:964, this Court has found that a reviewing court may reverse or modify a board's decision if it is manifestly erroneous in view of the substantial evidence in the record. Elysian Fields, Inc. v. St. Martin, 600 So.2d 69, 72 (La.App. 4th Cir. 1992).
The trial court, in its reasons for judgment, stated that the Board's award of $6.00 per hour for twenty-four hours a day was manifestly erroneous. On rehearing, the trial court raised the award to $20.00 per hour for the claimants jointly, because the record indicated "that Anne Mary suffered from a gag reflex that could subject her to aspiration of vomit at any time of day. Such an event requires considerable nursing skills rendered immediately to avoid a tragedy."
At issue in this appeal is the value of the services that the Keltys provided to their daughter. The Board valued their services at $6.00 per hour after determining that the services the Keltys provided were comparable to that of sitter care because the Keltys were not formally trained, licensed, or certified as nurses or therapists. We disagree that the Keltys were merely sitters.
Every day Anne Mary required four feedings through a gastro-intestinal tube which involved administering medications, feeding, monitoring for vomiting, and gas release through the G-tube after the feeding. The first feeding began at 8:45 a.m. and the last feeding was concluded at 2:10 a.m. The process could last one and a half hours per feeding. Lynn Kelty provided both physical and occupational therapy for Anne Mary every day. While it is true that Lynn Kelty is not a licensed therapist, she received informal training from occupational therapists at the Greenery Rehabilitation Center. Anne Mary received a bath daily which required both parents because she cannot sit unattended. At least every other day, Anne Mary was administered either a suppository or enema to facilitate elimination because her bowels cannot function independently. She was monitored for gag reflex 24 hours per day to prohibit her aspirating vomit which could be lethal.
A review of the testimony and the evidence presented at the administrative hearing indicates that the trial court was correct in modifying the award given to the Keltys for the services they provide. The record did not support the Board's award of only $6.00 per hour and such an award was manifestly erroneous.
The Board also argues that it is limited to reimbursement at $6.00 per hour because, in December of 1993, the Board adopted a rule that imposes a limit on the value of services provided by a family member.[4] La.Rev.Stat. 49:954(B) states that "each rule hereafter adopted shall be given effect upon its publication in the Louisiana *247 Register." We pretermit the efficacy of the Board's limit on the value of services provided by a family member because the rule has no retroactive effect, and the Keltys filed for custodial care reimbursement some ten years prior to the rule's enactment.
In its January 22, 1996, judgment the trial court awarded the Keltys $1,554.00 per week for the custodial care of Anne Mary based on a schedule of 2 hours at $25.00 per hour, 10 hours at $10.00 per hour, and 12 hours at $6.00 per hour. At rehearing, the trial court increased the weekly award to $3,260.00 based on compensation of 24 hours at $20.00 per hour because the Keltys must monitor Anne Mary at all times for a gag reflex.
In order for a non-professional parent to make a claim for nursing services rendered, there must be a showing that there is a need for the services, the reasonableness of the fee must be established, and the extent and the duration must be proven. Edwards v. St. Francis Med. Center, 623 So.2d 1387 (La.App. 2d Cir.1993), citing Tanner v. Fireman's Fund Ins. Companies, 589 So.2d 507 (La.App. 1st Cir.1991), writ denied, 590 So.2d 1207 (La.1992).
Although we feel tremendous compassion for the Keltys and admire the devotion they have exhibited towards their daughter, we find that the payment of $20.00 per hour for 24 hours a day custodial care is not supported by the record for two reasons. First, the trial court erred in valuing this service at $20.00 per hour. Brenda Relle, a licensed nurse, testified that an L.P.N.'s services were valued at $9.00 per hour in 1978 and at $15.00 per hour in 1988.[5] The Keltys are entitled to reimbursement for custodial care from mid-1978 through mid-1994. Extrapolating the above salary ranges, nursing services can be valued at $12.00 for 1983 and $18.00 for 1993. Accordingly, nursing services from 1978 and 1994 averaged approximately $15.00 per hour or $360.00 per day. After a careful review of the record which indicates this rate to be fair and reasonable under the circumstances, and because we do not wish to further protract this already lengthy litigation, the payment to the Keltys is reduced to $15.00 per hour for twenty-four hours per day.
Second, while we agree that Anne Mary requires continual monitoring, it is unrealistic to assume that at all times one of the parents attended to Anne Mary to the exclusion of all other tasks. The record indicates that Mrs. Kelty performed households tasks and provided for her other children during the times she cared for Anne Mary. Such tasks would include cleaning, grocery shopping, laundry, preparing meals for her other children as well as herself and her husband, transporting the other children to school and other engagements, assisting the other children with their homework, running errands such as banking, going to the dry cleaners, and shopping for clothing and household items. Also, even though the Keltys are commended for choosing to keep Anne Mary in the home in an attempt to keep their family intact, parents are obligated to provide a certain level of care for their children. We estimate that the amount of time Mrs. Kelty spent completing tasks other than caring for Anne Mary and the amount of time she would have normally spent caring for Anne Mary would be approximately four to five hours per day. Therefore, we reduce the daily reimbursement of $360.00 by 20%. The award to the Keltys is modified to $288.00 per day which equals $2,016.00 per week.

ASSIGNMENT OF ERROR NO. 3
The Fund argues that the trial court improperly modified the Board's final decision as to the date from which pre-judgment interest should accrue. The Board awarded interest beginning August 23, 1985, the date when the Keltys filed in Civil District Court. The trial court awarded interest from April 22, 1983, the date the Keltys filed a claim with the Medical Review Panel.
Interest on future medical benefits filed under the Medical Malpractice Act is payable from the date of the filing of the complaint or the date the expenses were *248 incurred, whichever is later. Lamark v. NME Hospitals, Inc., 522 So.2d 634 (La.App. 4th Cir.1988), writ denied, 526 So.2d 803 (La.1988). In Kelty v. Brumfield, 534 So.2d at 1334, this Court found that a claim is filed when the plaintiff requests a review from the Medical Review Panel. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 4
The Fund asserts that the trial court improperly awarded expert fees. The Supreme Court had ordered the Board to pay "[a]ll costs of all judicial proceedings related to this matter." Kelty v. Brumfield, 633 So.2d at 1219. It was error for the Board to refuse payment, and the trial court did not err in correctly assigning this cost to the Board.
For the reasons stated above, we affirm the trial court's judgment but amend the award for custodial care to $2,016.00 per week subject to a credit for any amounts previously paid with interest from April 22, 1983. All costs of this appeal are assigned to the Board.
AFFIRMED AS AMENDED.
NOTES
[1] This case has been before this Court on three previous occasions. See Kelty v. Brumfield, 534 So.2d 1331 (La.App. 4th Cir.1988); Kelty v. Brumfield, 559 So.2d 907 (La.App. 4th Cir.1990); and Kelty v. Brumfield, 615 So.2d 1131 (La.App. 4th Cir.1993).
[2] La.Rev.Stat. 49:950 et. seq.
[3] Although the Board is located in East Baton Rouge Parish, the parties stipulated to review by the Orleans Parish Civil District Court.
[4] LAC 37:III. Chapter 19 § 1917(B) states that "[n]ursing or sitter care provided by members of the patient's family or household will be funded at a rate not to exceed $6.00 per hour regardless of the licensure or qualification of the provider." LA. REGISTER, Vol. 19, No. 12, p. 1568. Dec. 20, 1993.
[5] Relle testified that hospitals charged patients $18.00 in 1978 and $30.00 in 1988 for nursing services, but the nurses were actually paid half that amount.