712 So.2d 663 (1998)
Edward N. GILMORE
v.
SGB CONSTRUCTION SERVICES, INC.
No. 97 CA 1669
Court of Appeal of Louisiana, First Circuit.
May 15, 1998.
Richard D. McShan, Amite, for Plaintiff/Appellant Edward N. Gilmore.
John F. Deas, Metairie, for Defendants/Appellees SGB Construction Services, Inc. and Liberty Mutual
*664 Before CARTER and FITZSIMMONS, JJ., and CHIASSON,[1] J. Pro Tem.
CARTER, Judge.
This is an appeal from a judgment rendered by a workers' compensation judge denying $2,198.66 in prescription expenses incurred by the claimant, Edward N. Gilmore (Gilmore).

FACTS
Gilmore was employed by SGB Construction, Inc., (SGB) on September 22, 1988, when he fractured his L-1 vertebrae during the course and scope of his employment. At that time, SGB was insured by a workers' compensation liability policy issued by Liberty Mutual Insurance Company (Liberty Mutual). Gilmore was treated from the time of his injury until 1994, by Dr. V.J. Zeringue. Dr. Zeringue's treatment consisted of prescribing Tylox, Vicodin, Flexeril, and Shape Fast.[2]
Gilmore discontinued treatment with Dr. Zeringue, and at some point, which is not established in the record, began seeing Dr. Nick Cefalu, his family physician, for treatment. Dr. Cefalu also prescribed Vicodin ES, Flexeril, Feldane, and Shape Fast. These medications were nearly identical to the medications prescribed by Dr. Zeringue.
In a letter dated April 18, 1995, Liberty Mutual notified Gilmore, through his attorney, Richard McShan (McShan), that it would no longer directly reimburse Gilmore for his prescription bills, but reimbursement would be made to the pharmacy, after the pharmacist contacted Liberty Mutual for payment verification. On June 14, 1995, Liberty Mutual denied a request by McShan for reimbursement because the request was not made according to Liberty Mutual's procedure. Liberty Mutual again informed McShan that reimbursement would only be made to the pharmacy, after the pharmacist had verified payment through Liberty Mutual's toll free telephone number. On September 27, 1995, Liberty Mutual responded to another request for reimbursement by McShan, by indicating that Liberty Mutual had already paid Thriftown Pharmacy and advised Gilmore's attorney to seek reimbursement from Thriftown. Throughout this entire period, every prescription paid by Liberty Mutual had been issued by Dr. Cefalu. At no time did Liberty Mutual inform Gilmore that his prescriptions from Dr. Cefalu were from an unauthorized doctor.
Between September 22, 1995, and March 4, 1996, Gilmore obtained prescriptions for Vicodin ES, Flexeril, Feldane, including their generic equivalents, and Shape Fast from Dr. Nick Cefalu, his family physician. The amount of these prescriptions totaled $2,198.66. The bills from Thriftown Pharmacy indicate the prescriptions were billed directly to McShan's law firm.
Gilmore filed a disputed claim for compensation alleging, among other things, Liberty Mutual's non-payment of these prescriptions. The original dispute specifically requested that McShan be reimbursed; however, on the day before trial, Gilmore repaid McShan and argued he should receive reimbursement from Liberty Mutual. By judgment dated April 28, 1997, the workers' compensation judge denied Gilmore's claim based on LSA-R.S. 23:1212.[3] The workers' compensation judge indicated the bills were paid by Gilmore's attorney, not a friend, or a relative as required for reimbursement under the statute, and there was no evidence Gilmore's attorney was a relative or friend. Gilmore appeals the judgment of the workers' compensation judge on the basis that LSA-R.S. 23:1212 was not in effect at the time of his injury.

LAW AND DISCUSSION
This court previously addressed this issue in Strange v. Combustion Engineering, *665 Inc., 94-0215, p. 5 (La.App. 1st Cir. 12/22/94); 649 So.2d 69, 71, wherein we held that an employer and its carrier were not entitled to an offset/credit as provided in LSA-R.S. 23:1212, because the medical expenses arose out of an accident that occurred two years prior to the effective date of the statute. The case sub judice is no different. Gilmore's accident occurred on September 22, 1988, but LSA-R.S. 23:1212 was not effective until January 1, 1990, nearly two years after Gilmore's accident.
The Louisiana Workers' Compensation Act in effect on the date of the plaintiff's injuries is controlling. Holiday v. Borden Chemical, 524 So.2d 285, 286 (La.App. 1st Cir.), writ denied, 531 So.2d 283 (La.1988). Thus, we find it was improper for the workers' compensation judge to deny Gilmore's claim based on LSA-R.S. 23:1212, because the statute was not in effect at the time of Gilmore's injury. Further, when, as in the instant case, the trial court commits legal error by applying the incorrect legal standard or principle, this court is required to determine the facts de novo from the entire record and render a decision on the merits. Washington v. Lyon's Specialty Company, 96-0263, p. 13 (La.App. 1st Cir. 11/8/96); 683 So.2d 367, 376, writ denied, 96-2944 (La.1/31/97); 687 So.2d 408. Thus, we will perform a de novo review of the workers' compensation judge's denial of Gilmore's prescription bills.
Liberty Mutual argues that LSA-R.S. 23:1212 was designed to ensure compliance with LSA-R.S. 23:1142,[4] 23:1203,[5] and 23:1034.2,[6] and that the workers' compensation judge's decision to deny reimbursement of the prescriptions was correct based on Gilmore's violation of those statutes. We disagree. Nowhere in the statutes cited by Liberty Mutual is there authority for a complete denial of Gilmore's prescription bills.
LSA-R.S. 23:1142 provides a $750.00 cap on costs incurred in non-emergency treatment without the mutual consent of the payor and the employee. Richard Labourdutte, a senior field representative of Liberty Mutual, testified Liberty Mutual never authorized treatment by Dr. Cefalu. The prescriptions at issue were all prescribed by Dr. Cefalu, even though they were essentially the same prescriptions issued by Dr. Zeringue. There is no evidence in the record that Gilmore ever contacted Liberty Mutual seeking authorization of his treatment with Dr. Cefalu. However, there is evidence in the record that Liberty Mutual did in fact pay for several of the prescriptions issued by Dr. Cefalu, without any objection that the prescriptions were issued by a doctor whose treatment was not authorized. Liberty Mutual did not contend there was any difference in the treatment rendered by Dr. Zeringue and Dr. Cefalu. From the documentary evidence in the record, it appears that Liberty Mutual's main obstacle in paying the prescription bills was not who the doctor was, but how the bill was submitted for payment. After our review of the record, we find that because Liberty Mutual did not object to the payment of the prescriptions issued by Dr. *666 Cefalu, his treatment was not "unauthorized" according to LSA-R.S. 23:1142.
Liberty Mutual also argues that Gilmore's prescription bills were not submitted in accordance with the workers' compensation reimbursement schedule for drugs. Liberty Mutual notified McShan on two occasions that Liberty Mutual would only reimburse the pharmacy, not Gilmore. However, there is no explanation in the record why McShan took no action to comply with Liberty Mutual's request to follow its procedure.
Labourdutte explained the reason for Liberty Mutual's procedure in paying the pharmacy directly instead of reimbursing Gilmore or McShan was to allow Liberty Mutual to pay the bills in accordance with the workers' compensation fee schedule. Under this procedure, the amount of money charged for the prescriptions could be less, since the bill would be submitted according to the statutory fee schedule. If the pharmacy billed the claimant directly, the fee schedule would not apply, and the medication could cost more.
Liberty Mutual cites the following provision of LSA-R.S. 23:1034.2, as applicable at the time of Gilmore's injury:
"D. Fees in excess of the reimbursement schedule shall not be recoverable against the employee, employer, or worker's compensation insurer."
However, a closer examination of LSA-R.S. 23:1034.2 indicates part D was added by La. Acts 1988, No. 938, and according to § 5 of the Act, was not effective until January 1, 1989, approximately three months after Gilmore's injury. Thus, LSA-R.S. 23:1034.2 D is not applicable to the determination of this issue. See Holiday v. Borden Chemical, 524 So.2d at 286.
It is well established that the workers' compensation act is remedial in nature. Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52, 55 (La.1993). In order to effectuate the humane policies it reflects, the law is to be liberally construed in favor of the injured employee. Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d at 55; Breaux v. Travelers Insurance Company, 526 So.2d 284, 290 (La.App. 3rd Cir.1988). Provisions of the workers' compensation law should be liberally construed in favor of the claimant. Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d at 55; Lester v. Southern Casualty Insurance Company, 466 So.2d 25, 28 (La.1985); Hill v. L.J. Earnest, Inc., 568 So.2d 146, 151 (La.App. 2nd Cir.), writ denied, 571 So.2d 652 (La.1990).
At the time of Gilmore's injury, LSA-R.S. 23:1034.2 provided for a reimbursement and fee schedule for drugs; however, it did not prohibit recovery of fees in excess of the reimbursement schedule. Because we are bound to liberally construe the provisions of the workers' compensation law in favor of the claimant, the decision of the workers' compensation judge is reversed, and judgment is rendered in favor of Edward N. Gilmore and against Liberty Mutual Insurance Company in the amount of $2,198.66 plus legal interest. All costs of this appeal are assessed to Liberty Mutual Insurance Company.
REVERSED AND RENDERED.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Shape Fast was prescribed to help Gilmore lose weight.
[3] LSA-R.S. 23:1212 provides in part:

Payment by any person or entity, other than a direct payment by the employee, a relative or friend of the employee, of medical expenses that are owed under this Chapter shall extinguish the claim against the employer or insurer for those medical expenses.
[4] At the time of Gilmore's injury LSA-R.S. 23:1142 provided in part:

B. Nonemergency care. Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in non-emergency diagnostic testing or treatment without the mutual consent of the payor and the employee.
[5] At the time of Gilmore's injury LSA-R.S. 23:1203 provided in part:

A. In every case coming under this Chapter, the employer shall furnish all necessary medical, surgical, and hospital services, and medicines, or any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services. All such services and treatment shall be performed at facilities within the state when available.
[6] At the time of Gilmore's injury LSA-R.S. 23:1034.2 provided in part:

A. The director of the office of risk management of the Division of Administration shall establish and promulgate a fee schedule for medical, surgical, and hospital services due under Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, and which is administered by the office of risk management in accordance with the provisions of R.S. 39:1527 et. seq.
B. The director shall adopt, in accordance with the Administrative Procedure Act, rules and regulations necessary to establish and implement a fee schedule for said services.