hMICHAEL E. KIRBY, Judge.
The Louisiana Patient’s Compensation Fund (hereinafter “PCF”) appeals the Judgment in favor of plaintiff resulting from plaintiffs Motion to Compel Payment of Medical Expenses.

STATEMENT OF THE FACTS

On October 4, 1985, Mrs. Helen LaMark suffered severe hypoxic brain damage after she had ceased breathing for an unknown period of time while in the recovery room of Meadowcrest Hospital following routine gynecological surgery. It is undisputed that she is an interdict and in need of lifelong medical care as a result of the incident.
On October 15, 1986, the Civil District Court for the Parish of Orleans rendered a Judgment in Alfred LaMark, Sr., et al. v. NME Hospitals, et al., 86-15294, Division K, wherein the trial court ordered the Commissioner of Insurance (predecessor to the Oversight Board) to pay to Alfred LaMark, Sr. (“Mr.LaMark”), as curator of Helen LaMark (“Mrs.LaMark”), from the PCF “all future | ¡¡.medical expenses as and when incurred by Helen LaMark, pursuant to R.S. 40:1299.43(E).”
For the past seventeen (17) years, the PCF has been paying Mr. LaMark for all medical expenses incurred by his wife as a result of the medical malpractice. On a number of occasions he has had to file a motion to compel payment of medical expenses, to protect her right to future medical care.
On November 20, 2001, the PCF published in the Louisiana Register amendments to Chapter 19 of its Rules LAC 37:111.19. These amendments purported to incorporate the Louisiana Department of Labor Reimbursement Schedule as a maximum allowable reimbursement to healthcare providers for medical services provided to claimants. The Oversight Board of the PCF states this was done pursuant to its statutory authority, La. R.S. 40:1299.44(D)(3).
The PCF Oversight Board implemented this new schedule in February 2002, reducing the skilled nursing rates being paid for Mrs. LaMark from $38.00/hr. to $31.00/hr. For a period of time Mr. LaMark paid the difference out of his own funds.
For skilled nursing services rendered for Mrs. LaMark beginning February 16, 2002, through approximately April 19, 2002, Mr. LaMark requested reimbursement from the PCF amounting to approximately $59,016.00. Pursuant to its Reimbursement Schedule, the PCF applied the maximum amount allowed under the Reimbursement Schedule and paid the sum of $40,157.40 to Mr. LaMark.
|3On or about April 23, 2002, plaintiff filed a Motion to Compel Payment of Medical Expenses and to Reverse Rate Reductions (the “Motion”) in the Civil District *369 Court for the Parish of Orleans, Division K. In his Motion, Mr. LaMark requested that the trial court order the Oversight Board to reinstate the original skilled nursing rates paid by the PCF prior to the adoption of its amended Rules, to pay weekend, night and state declared holiday rates for skilled nursing services and to pay the attorney’s fees and all costs for the proceedings, including expert witness fees.
Pursuant to an agreement (the “Agreement”) between the Oversight Board and Mr. LaMark executed in May 2002, the Oversight Board agreed to pay the higher skilled nursing rates until a final resolution of these issues. In the Agreement, Mr. LaMark agreed to refund all sums received by him over and above the skilled nursing rate set forth in the Reimbursement Schedule if he was unsuccessful in this litigation.
With respect to the state declared holiday rates for skilled nursing services, the PCF agreed to pay the time and one-half rate for the following holidays: New Year’s Day, Easter, Memorial Day, Fourth of July, Labor Day, Thanksgiving, and Christmas, consistent with the state’s holiday pay schedule.
A hearing on the Motion to compel Payment of Medical Expenses was held on June 7, 2002, at which time the trial court “granted the Motion to Compel.” A Judgment was subsequently prepared by the trial court and signed on June 12, 2002.
|4On or about June 19, 2002, the Oversight Board filed a Motion to Amend Judgment and/or, in the Alternative, Motion for New Trial, requesting that the Judgment be amended to be consistent with the Trial Court’s ruling in open court on June 7, 2002. A consent judgment on the Oversight Board’s Motion to Amend Judgment was prepared and agreed to by counsel for the parties and subsequently signed by the trial court on April 14, 2003. It is from this Judgment on Motion to Amend Judgment that the Oversight Board has taken its appeal.

STATEMENT OF THE LAW

Summary Judgments are reviewed de novo. Jefferson v. Cooper/T. Smith Corp., 02-2136 (La.App. 4 Cir. 10/1/03), 858 So.2d 691.
The issue presented is whether the PCF can reduce payments for future medical expenses that had been made for 17 years pursuant to a 1986 Judgment.
La. R.S. 40:1299.43(B), entitled future medical care and related benefits, states:
(1) “Future medical care and related benefits” for the purpose of this Section means all reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services and includes drugs, prosthetic devices, and other similar materials reasonably necessary in the provision of such services, after the date of the injury.
(2) “Future medical care and benefits” as used in this Section shall not be construed to mean non-essential specialty items or devices of convenience.
La. R.S. 40:1299.43(0) states:
Once a judgment is entered in favor of a patient who is found to be in need of future medical care and related benefits or a settlement is reached between a patient and the patient’s compensation fund in which the provision of medical care and related benefits is agreed upon and | ^continuing as long as medical or surgical attention is reasonably necessary, the patient may make a claim to the patient’s compensation fund through the board for all future medical care and related benefits directly or indirectly made necessary by the health care provider’s *370 malpractice unless the patient refuses to allow them to be furnished.
Insofar as the PCF’s authority to limit or cap the amounts paid for medical services, it cites two statutes. The first is La. R.S. 40:1299.44 D(2)(a), which provides:
The [Oversight Board] shall be responsible, and have full authority under law, for the management, administration, operation and defense of the fund in accordance with the provisions of this Part.
The second is La. R.S. 40:1299.44(D)(3), and states:
The board shall have authority, in accordance with applicable provisions of the Administrative Procedure Act, to adopt and promulgate such rules, regulations and standards as it may deem necessary or advisable to implement the authority and discharge the responsibilities conferred and imposed on the board by this Part.

DISCUSSION

As a victim of medical malpractice, the 1986 Judgment vested Mrs. LaMark with certain rights, one of which was the right to have her future medical expenditures paid. Thus, our query is whether or not Mrs. LaMark’s vested rights are divested by the adoption of the Reimbursement Schedule.
The Contract Clause, Article I, section 10, of the United States Constitution provides, “No State shall ... pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts.... ” Article I, section 23, of the Louisiana Constitution also prohibits the enactment of laws impairing the obligation of|ficontracts: “No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be enacted.”
Nevertheless, under the state’s (or Sovereign’s) inherent police powers, it can alter contracts, as long as vested rights are not infringed. Deluxe Electronic Payment Systems, Inc. v. State Department of Social Services and of Family Support, 98-1044 (La.App. 1 Cir. 12/28/98), 723 So.2d 1099; Rousselle v. Plaquemines Parish School Bd., 93-1916, p. 15 (La.2/28/94), 633 So.2d 1235, 1247.
In this case, for about 17 years the state-created authority paid Mrs. La-Mark’s medical expenses pursuant to the 1986 Judgment and La. R.S. 40:1299.43(E). Now it seeks to reduce those payments. We note that such reduction furthers the PCF’s self-interest to maintain as much capital as possible within the fund, without a corresponding guarantee that victims of medical malpractice will be properly cared for.
The PCF argues that its denial of payment of all of Mrs. LaMark’s incurred medical expenses does not modify the 1986 Judgment. We disagree. The 1986 Judgment orders the PCF to pay “all future medical expenses as and when incurred by Helen LaMark ... ”. [Emphasis added.] The PCF’s refusal to pay “all future medical expenses” caused Mr. LaMark to bring this Motion to Compel Payment.
The PCF argues that the 1986 Judgment should be treated “like workers’ compensation judgments.” Thus the PCF asks us to distinguish the 1986 Judgment from an ordinary civil judgment. It cites Williams v. BET Construction, Inc., 2000-1765 (La.App. 1 Cir. 11/09/01), 818 So.2d 21, for this proposition. Williams is distinguishable on several points. First, the plaintiff there was seeking a modification to the workers’ compensation judgment to obtain additional benefits, |7compared with this case where the PCF is refusing to pay medical expenses already incurred as well as limiting the amount of future medical expenses to be paid. Secondly, the deci *371 sion in that case also hinged on the interpretation of an amendment to La. R.S. 23:1310.8(E), whereby the First Circuit stated that “in a workers’ compensation case, the law in effect at the time of the compensable injury is controlling.” Williams, 2000-1765, p. 6, 818 So.2d 21, 25; Garrett v. Seventh Ward General Hospital, 95-0017, p. 6 (La.9/22/95), 660 So.2d 841, 844; overruled on other grounds by Al Johnson Construction Company v. Pitre, 98-2564 (La.5/18/99), 734 So.2d 623; Gilmore v. SGB Construction Services, Inc., 97-1669, p. 3 (La.App. 1 Cir. 5/15/98), 712 So.2d 663, 665.
Likewise, we find that in medical malpractice actions, the law in effect at the time of the actionable injury is controlling. In this case, the PCF is trying to retroactively limit the amount the PCF will pay for Mrs. LaMark’s future medical expenses. Assuming for the sake of argument that the PCF has the legal right to adopt this reimbursement schedule, because the PCF’s new reimbursement policy adversely affects Mrs. La-Mark’s already vested right to have all of her incurred medical expenses paid, it cannot be applied to Judgments rendered after its effective date.
While La. R.S. 40:1299.44 D grants the PCF the authority to administer the fund, it does not give it the authority to divest Mrs. LaMark of rights that vested with the 1986 Judgment. Therefore we affirm the trial court Judgment compelling the PCF to pay skilled nursing fees at the rate of $38.00 per hour.
We also affirm the trial court’s Judgment denying attorney fees to Mr. La-Mark, as it correctly noted this was a res nova issue.
Lin all other aspects, we affirm the trial court’s Judgment.
AFFIRMED.
MURRAY, J., concurs with reasons.