945 So.2d 975 (2006)
LOUISIANA PATIENTS COMPENSATION FUND OVERSIGHT BOARD, Plaintiff-Appellee
v.
William T. EDWARDS, as Legal Guardian of Alexander Lashley, Defendants-Appellants.
No. 41,594-CA.
Court of Appeal of Louisiana, Second Circuit.
December 20, 2006.
*976 Roedel, Parsons, Koch, Blanche, Balhoff & McCollister by Larry M. Roedel David A. Woolridge, Jr., Carlton Jones, III, Baton Rouge, for Appellant.
James A. Rountree, Monroe, for Appellees.
Before STEWART, DREW and SEXTON (Pro Tempore), JJ.
STEWART, J.
William T. Edwards appeals a judgment denying his request for additional compensation from the Patient's Compensation Fund ("PCF") to pay for nursing services provided to his grandson, Alexander Lashley, by Leading Homecare, Inc. The trial court found that the reimbursement rate for nursing services was established by regulation of the Patient's Compensation Fund Oversight Board ("PCFOB"). We agree and affirm the trial court's judgment.

FACTS
Edwards filed a rule to show cause against the PCF, alleging that it had not paid the full amount due Leading Homecare for nursing care provided to Lashley. In response, PCF raised a number of exceptions and a motion to strike, none of which were ruled upon by the trial court prior to its judgment on the rule. PCF asserted that the amount it pays for nursing care is limited by the reimbursement rates as provided in LAC 37:III.1917(A).
The minutes show that a proceeding regarding the rule took place on November 21, 2005. The parties declined to have the proceeding recorded; thus, there is no transcript. The minutes state that the parties dispensed with the presentation of witnesses and entered an agreement as to what the testimony of Edwards and another witness would have been. The court noted that the matter was to be brought before the Oversight Board at its meeting in December so that the parties could perhaps reach an agreement. In the absence of an agreement, the parties were to submit one-page briefs as to PCF's reimbursement rates and the nursing care provider's charges for the court to review in making its ruling. The parties did not come to an agreement.
A transcript of court proceedings on February 24, 2006, includes the trial court's ruling that the reimbursement schedule would be followed. The parties considered this an issue of law. Upon rendition of the judgment denying Edwards' rule for additional reimbursement, this appeal by Edwards followed.

DISCUSSION
The issue presented by Edwards on appeal is as follows:
Can PCF establish by rule in 2001 a ceiling on its reimbursement for medical services provided to a malpractice victim in the face of La. R.S. 40:1299.43, and if so can it apply the rule to a malpractice victim whose entitlement to future medical care preceded the adoption of the rule?
The parties posed this issue before the trial court as a question of law and presented *977 no evidence, other than the parties' agreement as to certain testimony. The minute entry regarding this agreement does not specify the stipulated testimony. Edwards argues that Lashley is a victim of medical malpractice whose entitlement to future medical care predated the 2001 rule setting a reimbursement schedule for nursing care fees. Edwards implicitly argues that application of the fee schedule deprives Lashley of reasonable future medical care to which he is entitled.
At the outset, we note that the PCFOB is responsible for the "management, administration, operation, and defense" of the PCF. La. R.S. 40:1299.44(D)(2)(a). The PCFOB has exclusive jurisdiction over future medical care and related care claims by medical malpractice victims. Kelty v. Brumfield, 93-1142 (La.2/25/94), 633 So.2d 1210, rehearing denied, 93-1142 (La.3/25/94), 635 So.2d 247; Louisiana Patient's Compensation Fund Oversight Board v. Edwards, 39,149 (La.App.2d Cir.12/15/04), 891 So.2d 85. Included in the PCFOB's exclusive jurisdiction is the authority to receive, evaluate, pay, settle, and reject claims. Id. The PCFOB's authority over the Fund along with its exclusive jurisdiction over claims for future medical care and related services would reasonably include the authority to set rates for services.
The rules governing the administration and payment of future medical and related benefits for medical malpractice victims are set forth in Chapter 19 of Title 37 of the Louisiana Administrative Code ("LAC"). The obligation to provide future medical care and related services is explained in LAC 37:III:1905, which limits the amount to be paid as follows:
C. Pursuant to the Act, the board has been, expressly and/or implicitly, vested with the responsibility and authority for the management, administration, operation, and defense of the fund and, as a prudent administrator, it must insure that all future medical care costs and related benefits are reasonable and commensurate with the usual and customary costs of such care in the patient's community. Therefore, the amount paid by the fund for future medical care and related benefits shall be the lesser of the amount billed for said care or benefit or the maximum amount allowed under the reimbursement schedule. (Emphasis added.)
LAC 37:III:1903 defines the following pertinent terms:

Future Medical Care and Related Benefits: All reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services, and includes drugs, prosthetic devices, and other similar materials reasonably necessary in the provision of such services. The fund's obligation to provide these benefits or to reimburse the claimant for those benefits is limited to the lesser of the amount billed therefor or the maximum amount under the reimbursement schedule.

Reimbursement Schedule: The most recent reimbursement schedules promulgated by the Department of Labor, Office of Workers' Compensation pursuant to R.S. 23:1034.2.
Moreover, LAC 37:III:1917(A) and (B)(1) pertaining to nursing and sitter care provides that the PCF will fund such care "at the lesser of the billed amount or the maximum amount allowed under the reimbursement schedule." Under LAC 40:I.3511(C), the maximum reimbursement for nursing care is $44 per hour for a registered nurse, $31 per hour for a licensed practical nurse, and $11 per hour for a certified nursing assistant. The reimbursement schedule was adopted in 2001, years prior to when Leading Homecare *978 began providing services to Lashley in July 2005.
Edwards relies on two cases in support of his argument that the reimbursement schedule should not be applied to Lashley's nursing care. The first is Bartee v. Children's Clinic of Southwest Louisiana, 2005-583 (La.App. 3d Cir.8/17/05), 910 So.2d 470, writ denied, 2005-2465 (La.3/24/06), 925 So.2d 1230. The plaintiff, Pamela Bartee, requested reimbursement for medical expenses and custodial care from the PCF on four occasions and received no response. She then filed a rule to show cause in district court to compel payment. The PCF filed an exception of lack of subject matter jurisdiction on the grounds that the PCFOB has exclusive jurisdiction and that Bartee failed to follow the administrative appeals requirements. The trial court denied the exception and the appellate court denied the PCF's writ. The third circuit explained that once a malpractice plaintiff obtains a judgment awarding future medical care, claims for payment of medical expenses and related benefits must first be submitted to the PCF, which has thirty days to respond to the request. If the PCF fails to respond or if the response leads to dispute between it and the claimant, the dispute may be brought before the district court with continuing jurisdiction as provided in La. R.S. 40:1299.43(E)(1). This same procedure was recognized by this court in Louisiana Patient's Compensation Fund Oversight Board v. Edwards, supra.
The appellate court in Bartee explained that La. R.S. 40:1299.44 dealing with the PCFOB's authority was not meant to supersede provisions dealing exclusively with the plaintiff's rights and the procedures for making executory judgments awarding future medical care. We agree. However, nothing in Bartee or in La. R.S. 40:1299.43 addressing future medical care and related benefits prohibits the PCFOB from implementing a schedule for reimbursement of expenses.
Edwards also refers us to LaMark v. NME Hospitals, Inc., XXXX-XXXX (La.App. 4th Cir.3/10/04), 870 So.2d 367, in which the plaintiff, Helen LaMark, was a victim of medical malpractice entitled to lifelong care. For seventeen years, the PCF had paid all her expenses. However, upon implementation of the reimbursement schedule in February 2002, the amount paid for Mrs. LaMark's skilled nursing care was reduced from $38 per hour to $31 per hour, and Mr. LaMark paid the difference. The plaintiff filed in the district court a "Motion to Compel Payment of Medical Expenses and to Reverse Rate Reductions." The district court granted the motion, and the PCFOB appealed. The issue was whether the PCF could reduce payments for future medical expenses that had been made for seventeen years pursuant to a judgment rendered in 1986. The appellate court concluded that application of the reimbursement rates to Mrs. LaMark divested her of vested rights to future medical care as provided in her judgment. Its reasoning was that application of the rates modified the 1986 judgment which ordered the PCF to pay "all future medical expenses as and when incurred by Helen LaMark. . . ." The court also reasoned that the law in effect at the time of the medical malpractice injury is controlling, so the PCF could not retroactively limit the amount it paid for Mrs. LaMark's future medical expenses.
While LaMark appears analogous to the present matter, the PCF asserts that application of the new reimbursement schedule adversely impacted Mrs. LaMark's longtime provider of nursing care. The LaMark opinion does not make this clear, as it indicates only that the rate schedule affected payments that had been made for seventeen years since the judgment. However, it is clear in the present matter *979 that Leading Homecare did not begin providing services to Lashley until well after the reimbursement schedule had been adopted and made a matter of public record. Thus, application of the reimbursement schedule did not adversely impact the provider by arbitrarily lowering the payment rate after it had already been providing services for years at a higher pay rate. Leading Homecare and Edwards presumably had notice of the applicable rate at the time Leading Homecare became the provider. The LaMark decision was also based on the specific language of the malpractice judgment, which required payment of all future medical expenses as and when incurred. Lashley's judgment is not in the record.
We are not persuaded that LaMark, supra, precludes application of the reimbursement schedule to services provided by Leading Homecare to Lashley. There is no showing on this record that application of the reimbursement schedule divests Lashley of his right to future medical care. The exact measure of expenses for future medical care is not known at the time a judgment awarding future medical care is rendered. Over time, expenses may increase or decrease as the recipient's condition changes. An increase in reimbursement rates may be sought. See Maraist v. Alton Ochsner Medical Foundation, 2002-2677 (La.App. 1st Cir.5/26/04), 879 So.2d 815; Manning v. United Medical Corp. of New Orleans, XXXX-XXXX (La.App. 4th Cir. 3/2/05), 897 So.2d 867, writ denied, 97-0936 (La.5/16/97), 693 So.2d 801. As provided in La. R.S. 40:1299.43(B) and the LAC provisions cited previously, future medical care and related benefits are defined in terms of "all reasonable" care. The reasonableness issue has not been litigated, and we cannot say on this record that application of the reimbursement rates deprives Lashley of reasonable nursing care.
We also note that the issue of retroactive application was addressed in Kelty v. Brumfield, 96-0869 (La.App. 4th Cir. 3/12/97), writ denied 97-0918 (La.5/16/97), 693 So.2d 800, wherein the parents of a medical malpractice victim sought a rate increase for the care they provided their child. The PCFOB argued that it was limited to a rate of $6 per hour as established by a rule adopted in December 1993. Because the administrative rule had no retroactive effect under La. R.S. 49:954(B) and the parents had filed for custodial care reimbursement ten years prior to enactment of the rule, the court found the $6 rate inapplicable to the Keltys.[1] Here, while Lashley has been receiving future medical care for years, Leading Homecare did not begin providing services to him until years after adoption of the reimbursement rate schedule. Application of the reimbursement schedule is not retroactive as to care provided by Leading Homecare.
In summary, we find that the PCFOB was authorized to establish the rule adopting a reimbursement schedule for medical services and that the rule can be applied to the nursing care services provided by Leading Homecare.

CONCLUSION
For the reasons stated, the trial court's judgment is affirmed with costs assessed against the appellant.
AFFIRMED.
NOTES
[1] La. R.S. 49:954(B) states in relevant part, "Each rule hereafter adopted shall be effective upon its publication in the Louisiana Register, said publication to be subsequent to the act of adoption. . . ."