# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-798

PAMELA SHARONETTE BARTEE,
INDIVIDUALLY AND AS TUTRIX AND
ADMINISTRATRIX OF THE ESTATE OF
THE MINOR CHILD, JAMIE DENISE BARTEE

VERSUS

CHILDREN'S CLINIC OF SOUTHWEST
LOUISIANA, INC., ET AL.

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 1996-6394
HONORABLE DAVID KENT SAVOIE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## MARC T. AMY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

Charles H. Braud, Jr.
Louisiana Department of Justice
Office of the Attorney General
Post Office Box 94005
Baton Rouge, LA   70804
(225) 326-6081
COUNSEL FOR INTERVENOR/APPELLEE:
        State of Louisiana, Department ofJustice

Leslie A. Cordell
Orrill, Cordell & Beary, LLC
412 W. University Avenue, Suite 206
Lafayette, LA   70506-3673
(337) 237-8200
COUNSEL FOR PLAINTIFFS/APPELLEES:
        Pamela Sharonette Bartee
        Jamie Denise Bartee

**Nadia de la Houssaye**
**Perret Doise (APLC)**
**Post Office Drawer 3408**
**Lafayette, LA   70502-3408**
**(337) 262-9000**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Louisiana Patient's Compensation Fund**

AMY, Judge.

The plaintiff sought payment of a number of expenses from the Louisiana Patient's Compensation Fund for her minor daughter who sustained a brain injury from alleged medical malpractice. The trial court found in favor of the plaintiff, awarding private school tuition, installation and maintenance of a home alarm system, custodial care at an hourly rate for sixteen hours per day, and attorney fees. The Louisiana Patient's Compensation Fund appeals. For the following reasons, we affirm.

### Factual and Procedural Background

Pamela Sharonette Bartee, individually and as tutrix and administrator of her minor child's estate, filed the medical malpractice suit underlying the present matter in 1996. She asserted that shortly after her daughter Jamie's birth in 1993, the newborn became dehydrated and sustained brain injury. The record indicates that Jamie's injuries are permanent and have resulted in a number of mental, emotional, and physical difficulties. While Jamie was thirteen years of age at the time of trial, her cognitive ability was estimated to be at the pre-school level.

After summary judgment was entered in favor of two of the defendant health care providers, the plaintiff entered into a settlement with the remaining defendant for the limits of their liability under La.R.S. 40:1299.42(B)(2).[1] Thereafter, the plaintiff

---

[1] A plaintiff's recovery in a medical malpractice action is dictated by La.R.S. 40:1299.42(B), which provides:

>    (1)    The total amount recoverable for all malpractice claims for injuries to or death of a patient, exclusive of future medical care and related benefits as provided in R.S. 40:1299.43, shall not exceed five hundred thousand dollars plus interest and cost.

>    (2)    A health care provider qualified under this Part is not liable for an amount in excess of one hundred thousand dollars plus interest thereon accruing after April 1, 1991, for all malpractice claims because of injuries to or death of any one patient.

pursued the matter against the Louisiana Patient's Compensation Fund (PCF) and settled with the PCF for the statutory cap thereafter. She reserved her right to future medical care and related benefits. The matters in the present proceeding were before the trial court on the plaintiff's rule to show cause why the PCF should not be compelled to provide reimbursement for Jamie's private school tuition, installation and maintenance of a home alarm system, and custodial care and tutoring. The plaintiff also requested attorney fees pursuant to La.R.S. 40:1299.43(E)(2).

The trial court awarded private school tuition and tutoring, reimbursement for the home alarm system and ongoing monthly monitoring charges, and reimbursement for custodial care in the amount of $13.00 per hour for sixteen hours per day to the plaintiff for her time caring for Jamie. Finding that the PCF unreasonably failed to pay for certain claims, the trial court awarded attorney fees, costs and expert witness fees. The trial court denied the request for school uniform expenses.

The PCF appeals, assigning the following as error:

1.  The trial court erred in ordering the PCF to pay private tuition and tutoring, as a medical and related benefit under Louisiana Revised Statute[s] § 40:1299.43 (A)(3).

2.  The trial court erred in ordering the PCF to pay private tuition and tutoring, based on the reasoning that the Calcasieu Parish public school system lacks the capacity to adequately provide for same.

3.  The trial court erred in ordering the PCF to pay for a home alarm system and its monthly service costs under Louisiana Revised Statute[s] § 40:1299.43.

4.  The trial court erred in awarding reimbursement for custodial care to Ms. Bartee in the amount of thirteen dollars per hour for sixteen hours per day.

5.  The trial court erred in not applying the PCF Reimbursement Rate Schedule to Plaintiff's custodial care claim.

2

6. The trial court erred in awarding $25,000.00 in attorneys' fees based on the finding that the PCF unreasonably failed to pay for medical and related care claims within thirty (30) days of submission of claim.

**Discussion**

*Private School Tuition and Tutoring*

The PCF first questions the trial court's award of private school tuition and tutoring for Jamie. It first contends that tuition and tutoring do not fit within the definition of "future medical care and related benefits" under the Medical Malpractice Act and, therefore, the trial court erred in awarding expenses for Jamie's attendance at Our Lady Queen of Heaven School, a private school. The PCF further contends that the evidence does not establish that Our Lady Queen of Heaven School offered services more appropriate for Jamie than does the Calcasieu Parish school system.

The award of future medical care and related benefits is governed by La.R.S. 40:1299.43, Paragraph B(1) of which indicates that "future medical care and related benefits" means "[a]ll reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services and includes drugs, prosthetic devices, and other similar materials reasonably necessary in the provision of such services . . . ." The provision further instructs that "'[f]uture medical care and benefits' as used in this Section shall not be construed to mean non-essential specialty items or devices of convenience." La.R.S. 40:1299.43(B)(2)

In oral reasons for ruling, the trial court awarded private school tuition and tutoring as follows:

> Insofar as the tuition is concerned, I initially thought that Jamie could get the same thing; but I am satisfied from the evidence that has been presented here today that she did not get the care and the education that she is entitled to in the public school system of Calcasieu Parish. So, I am going to find that the evidence does show that the special

3

education Jamie receives at Our Lady Queen of Heaven is not available to her at public schools; and as a result I am going to order that it be provided to her. That means that tuition in the amount of $210 and summer tutorship fees of $150 a month are due. I am not sure what that adds up - - what the total of that is, but that's from when she started school, and I think the evidence shows in August of '03 and continuing. That obligation to pay the tuition is there.

After review, we find the trial court's award of private school tuition and tutoring supported by the record.

Testimony indicated that the type of structured educational environment recommended by Jamie's physicians was necessitated by the underlying medical malpractice. Dr. William Black, an expert in the field of neuropsychology, evaluated Jamie at the request of her treating pediatric neurologist. His clinical impression of Jamie was that she will have moderate mental retardation for the remainder of her life and will continue to have a lack of development of cognitive skills, social skills, and emotional skills. He noted that Jamie will continue to require 24-hour supervision, "whether this be in the home with nursing level sitters or *in a specialized school setting, which is a more restrictive setting . . . .*" (Emphasis added.) With regard to Jamie's attendance at Our Lady Queen of Heaven School, Dr. Black opined that the school was appropriate "based on what the teachers say and based on what she's doing." He found it important that the school offers a structured environment and is responsive to Jamie's needs. Further, Dr. John Willis, a pediatric neurologist, explained in an affidavit that a special education program featuring close supervision at both recess and lunch periods and small classes would be "medically necessary to provide care and rehabilitation for Jamie's brain damage."

Jamie's teacher at Our Lady Queen of Heaven School, Catherine King, who is certified in special education, also testified. Ms. King explained the self-contained

classroom environment provided at the school, the consistency in the special education teaching staff, and Jamie's progress while attending the school. She stated that the school offers tutoring during the summer recess which prevents the students from regressing while away from school.

The PCF's contention that the evidence does not support a finding that Our Lady Queen of Heaven School offers a more appropriate educational environment for Jamie than the Calcasieu Parish public school system also lacks merit. Along with the testimony from Ms. King, the plaintiff offered the deposition of the special education teacher who taught Jamie while she attended public school. The teacher, who was not certified, explained that Jamie, when not in her special education classroom, attended classes such as art and physical education with the students from the grade level at which she was functioning. Based on the evidence presented, the trial court could have concluded that this testimony demonstrated that the services offered at Our Lady Queen of Heaven School were more in keeping with the type of structured environment recommended by Dr. Black and Dr. Willis.

The PCF's arguments regarding this portion of the judgment lacks merit.

*Home Alarm System*

The PCF next asserts that the trial court erred in ordering that the PCF provide reimbursement for expenses related to a home alarm system. As with the private school tuition, it contends that the alarm system does not qualify as "future medical care and related benefits" and that, furthermore, it should be prohibited by La.R.S. 40:1299.43(B)(2), which provides future medical care and benefits "shall not be construed to mean non-essential specialty items or devices of convenience."

5

In awarding expenses related to the home alarm system, the trial court explained:

> On the issue of a home alarm system, I do not find it's a device of convenience, but rather a necessary tool in caring for Jamie. So, I am going to grant the motion to compel on that. That means that there will be an award of $394.83 for the installation and [$]24.95 per month since September of '04 when it was installed.

The plaintiff testified as to Jamie's sleeplessness and anxiety during the night hours and her tendency to wander at times. The plaintiff explained the precautions she takes to ensure that Jamie is safe while at home and that, before the alarm, she had a variety of locks on the doors to ensure that Jamie did not leave the house. After the installation of the alarm system, the monitor alerts her when Jamie opens a door. It enables her to know if Jamie is attempting to leave the house.

Dr. Black explained that Jamie will require twenty-four hour supervision for the rest of her life and that, given her deficits, the home alarm system is essential for her safety. He testified that, due to Jamie's "hyperactivity, impulsivity and lack of awareness of danger to herself and others that wherever she is, in the home or elsewhere, requires some kind of security system so that she doesn't slip out or barge out without other people knowing that she's gone. I think that's essential."

In light of this testimony, the trial court's determination that the system was necessitated by Jamie's condition, was essential, and was recoverable as "future medical care and related benefits" is supported by the record.

This assignment lacks merit.

*Custodial Care Award for Parental Care*

The trial court awarded custodial care reimbursement to the plaintiff at an hourly rate of $13.00 for sixteen hours per day. The PCF contests this award in two

6

regards. First, it contends that the trial court should have limited the plaintiff's reimbursement to eight hours on days when Jamie attended school and to twelve hours on days she does not. Second, the PCF contends that the trial court should have applied the reimbursement rate schedule of $6.00 per hour, plus an inflationary adjustment, to the plaintiff's custodial care claim rather than awarding her the hourly rate of $13.00.

The trial court first addressed the applicability of the PCF's administrative rules, explaining:

> On the issue of custodial care, I find that the PCF has the authority to set rates for services and that these rules were promulgated in accordance with the law. However, I agree with the plaintiff that this cause of action for future medical expenses arose prior to the enactment of those rules; namely, the date of injury in October of 1993. Louisiana Revised Statute Title 40:1299.43[B](1)(a) and (b) define future medical care and related expenses as all reasonable custodial services incurred after the date of injury up to date of settlement, as well as all reasonable custodial services incurred after the date of injury - - that will be incurred after the date of settlement. In reading Sections 1(a) and (b) together, future medical care is defined as all reasonable custodial services after the date of injury. Jamie Bartee's injury arose in October of '93; and, therefore, this matter is not governed by the rules adopted and which were enacted in November of 1993.
>
> I now must set the rate for custodial services rendered by Jamie Bartee's mother. In making this decision, I cite the parties to Kelty v. Brumfield. In Kelty, the board valued their services at $6 an hour after determining that the services the Keltys provided were comparable to that of a sitter, because the Keltys were not formally trained, licensed, or certified as nurses or therapists. Based on the evidence provided in that case, the Fourth Circuit disagreed that the Keltys were merely sitters. Based on an average of LPN salaries over the time period awarded $15 per hour for 24 hours a day and reduced the daily reimbursement by 20 percent per day. This reduction accounted for the time Ms. Kelty spent doing other tasks during the day.
>
> The evidence in this case does not show that Ms. Bartee should receive the hourly rate of a licensed nurse; however, I do believe that the care she provides to Jamie is more than that of a sitter or a CNA. I set her hourly rate at $13.00 per hour and award her 16 hours per day. The reduction from 24 hours accounts for the time that Jamie spends in

school and also for the time she spends sleeping; and I have awarded her the home alarm system which allows Jamie's mother to have rest and only to monitor Jamie when the alarm goes off.

Certainly the PCF has the authority to promulgate rules, regulations, and standards necessary to discharge its responsibilities. *See* La.R.S. 40:1299.44(D); *Bartee v. Child. Clinic of SW La.*, 05-583 (La.App. 3 Cir. 8/17/05), 910 So.2d 470, *writ denied*, 05-2465 (La. 3/24/06), 925 So.2d 1230. However, as pointed out by the plaintiff, the PCF's administrative rule limiting the amount of the custodial payment to family members to $6.00 per hour was not enacted until *after* Jamie sustained injury. Thus, we consider whether the trial court erred in finding that the PCF administrative rules, adopted *after* Jamie's October 1993 cause of action for medical malpractice arose, are inapplicable to her reimbursement claim, i.e., whether application of the rule would infringe upon a vested right.

As explained by the fourth circuit in *Kelty v. Brumfield*, 96-0869 (La.App. 4 Cir. 3/12/97), 691 So.2d 242, (citing La.R.S. 49:954(B)), *writ denied*, 97-0918 (La. 5/16/97), 693 So.2d 800, *writ denied*, 97-0936 (La. 5/16/97), 693 So.2d 801, the adoption of the PCF administrative rule regarding reimbursement for custodial care for family members did not have retroactive effect. While the *Kelty* court noted that the plaintiffs in that case pursued their own custodial care costs for ten years prior to the enactment of the rule, the reference to the filing date for custodial care is a distinction of no moment. Rather, the remainder of the discussion in *Kelty* also addresses family custodial costs incurred *after* the PCF's 1993 regulation limiting the hourly rate of custodial care to family members and discusses awards well in excess of the PCF's rates. Similar to the discussion in *Kelty*, Jamie's right to reasonable and necessary medical expenses arose on the date of her injury, prior to the creation of the

8

1993 family custodial care rule. Accordingly, the trial court did not err in finding the rule inapplicable.

We note that the PCF asserts that the present matter is analogous to *Louisiana Patients Compensation Fund Oversight Board v. Edwards*, 41,594 (La.App. 2 Cir. 12/20/06), 945 So.2d 975, wherein the second circuit considered a suit involving a plaintiff's suit for recovery of additional fees payable to a third-party provider. We do not apply the reasoning of *Edwards* to the present case given the difference in the factual background of this case and that in *Edwards* which involved a third party's knowledge of a rule change applicable its services. In particular, we note that the second circuit did not addressed what effect the reduced rate change had on the vested rights of the malpractice victim, as here.

Neither do we find merit in the PCF's assertion that either the $13.00 hour rate or the sixteen hours in custodial care awarded the plaintiff require alteration on appeal. With regard to the hourly rate, the trial court noted that the services rendered by the plaintiff exceed those of a sitter or a Certified Nursing Assistant, but that she does not render the services of a licensed nurse. This finding is supported in the record given the plaintiff's testimony regarding Jamie's need for medication and for various hygiene and sanitation measures. The $13.00 hourly rate is consistent with the level of ability discussed by the trial court, as it falls between the hourly rates available to Licensed Practical Nurses and those available to Certified Nursing Assistants in the area as testified to by an expert in nursing and home health administration. As for the sixteen hours of care per day awarded, this too, is supported by testimony in the record indicating that the plaintiff supervises Jamie at all times while she is not attending school. While the PCF contends that the plaintiff

should not be compensated for the time that Jamie is sleeping, due to the home alarm system, the plaintiff's testimony reveals that she must respond to Jamie's constant and various needs throughout the night.

This assignment of error lacks merit.

*Attorney Fees*

Finally, the PCF contests the trial court's award of $25,000.00 in attorney's fees pursuant to La.R.S. 40:1299.43(E)(2), which provides: "The court shall award reasonable attorney fees to the claimant's attorney if the court finds that the patient's compensation fund unreasonably fails to pay for medical care within thirty days after submission of a claim for payment of such benefits."

The PCF does not question the trial court's determination that its failure to pay benefits was unreasonable. Rather, the PCF argues that the parties agreed to waive all attorneys' fees "based upon PCF counsel's assurance of good faith negotiations to fully compromise these matters." The plaintiff asserts that, as there was no settlement of the matters under discussion, nor any offer of settlement by the PCF, the claim for attorney's fees was preserved.

The trial court explained as follows in assessing damages:

> On the issue of attorneys fees, Louisiana Revised Stat[ute] Title 40:1299.43 states that the Court shall award reasonable attorney fees to the claimant's attorney if the Court finds that the patient's compensation fund unreasonably fails to pay medical care within thirty days after submission of a claim for payment of such benefits. The evidence presented in this case, particularly the checks sent December of '06 for medical expenses incurred more than two years prior to that time, convinces me that the PCF unreasonably failed to pay the medical care within thirty days. Accordingly, I will grant the plaintiff's request for attorney's fees. I will award $25,000 attorneys fees, which includes the sum for that paralegal, not distinguishing what that dollar amount is; but I am going to award you the services for that.

The parties presented these arguments to the trial court, along with email correspondence surrounding the alleged waiver. After our review of the related correspondence, we find no error in the trial court's determination that the correspondence does not evidence an effective waiver of the right to pursue attorney's fees.

This assignment lacks merit.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this proceeding are assessed to the appellant, the Louisiana Patient's Compensation Fund.

**AFFIRMED.**