618 So.2d 600 (1993)
Paul A. BOWER, Plaintiff-Appellee,
v.
SCHUMPERT MEDICAL CENTER, et al., Defendant-Appellant.
No. 24701-CA.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1993.
*601 Blue, Williams & Buckley by Bruce A. Cranner, Metairie, Lunn, Irion, Johnson, Salley & Carlisle by James B. Gardner, Shreveport, for defendant-appellant.
A.J. Gregory, Jr. and Troy E. Bain, Shreveport, for plaintiff-appellee.
Before LINDSAY, BROWN and STEWART, JJ.
LINDSAY, Judge.
The plaintiffs, Paul and Sharon Bower, filed this suit, individually and on behalf of their minor daughter, Emily, a medical malpractice victim. Named as defendants were Schumpert Medical Center and Dr. Edwin Byrd, the obstetrician who delivered Emily. After settlement with Schumpert and dismissal of Dr. Byrd, the Louisiana Patient's Compensation Fund (PCF) was added to the suit. From a trial court judgment ordering the PCF to pay Emily's mother, Sharon Bower, for custodial care and therapy which she renders to her child, the PCF appeals. For the following reasons, we affirm the trial court judgment.

FACTS
On March 15, 1984, when Emily was born, she suffered a deprivation of oxygen, known as neonatal asphyxia, which caused substantial brain damage. The plaintiffs allege that this occurred due to the defendants' negligent failure to timely recognize signs of fetal distress and failure to timely perform an emergency Caesarean section. The child was eventually delivered by C-section, but exhibited no spontaneous respiration at birth. She was resuscitated, but suffered brain damage due to deprivation of oxygen.
As a result, Emily has cerebral palsy, spastic quadraplegia and a seizure disorder. She has almost no control over her body and cannot sit up, stand, crawl, speak or care for herself in any way. She requires custodial care and supervision twenty-four hours per day. However, her intellect is intact and she is of normal intelligence. With the aid of a device known as a light talker, the child has learned to communicate by shining a light, which is attached to a head piece, on various pictures on a board placed on her wheelchair tray.
Although Paul Bower has adult children from a previous marriage, Emily is the only *602 child born of the marriage of Paul and Sharon Bower. Since the birth of the child, Sharon Bower has devoted a large portion of her time to the care of Emily. Mrs. Bower has learned computer skills to facilitate Emily's use of computers to communicate. She reads extensively on the subject of cerebral palsy and makes many of the educational toys used in Emily's therapy. Sharon spends several hours per day playing educational games with Emily and conducts daily physical therapy sessions. Sharon also feeds, bathes and dresses the child who is now nine years old.
On March 28, 1991, a settlement was reached between the plaintiffs and Schumpert Medical Center for $100,000. Schumpert was self-insured for this amount per occurrence. The plaintiffs reserved their rights against all other persons, including the PCF, for damages in excess of $100,000.
The plaintiffs dismissed their claim against the obstetrician, Dr. Edwin Byrd. They went forward solely against the PCF for damages and medical expenses in excess of the $100,000 obtained in the settlement with Schumpert.
In addition to these claims, the plaintiffs sought to recover for "past ... custodial care gratuitously rendered by Paul and Sharon Bower from the date of Emily Bower's birth on March 15, 1984 through the date of trial, March 19, 1992." The plaintiffs also sought to recover for future custodial care to be rendered by Mrs. Bower to the child. The plaintiffs attached to their pleadings a cost analysis of the medical and custodial care that will be required for the remainder of the child's life.
The PCF objected to any award to the plaintiffs for past or future custodial care rendered by the parents of this child. The PCF argued that parents have a duty to care for their children during their minority, pursuant to LSA-C.C. Art. 227. Further, the PCF contended that on March 6, 1992, just weeks before the present hearing began, the PCF Oversight Board adopted a set of rules styled "Future Medical Care Case Guidelines." These rules prohibit the payment to a patient's family, spouse, or household member for providing nursing care or custodial (sitter) services. Specifically the PCF rule at issue provides:
The PCF will provide and/or fund inpatient and/or outpatient nursing care (including care by RN's, LPN's and qualified sitters) when such care is required, to provide reasonable medical, surgical, hospitalization, physical rehabilitation or custodial services directly or indirectly made necessary by the health care provider's malpractice. The PCF will only provide and/or fund nursing care and sitter care by licensed and/or qualified nurses and sitters. The PCF will not pay the family, blood-relatives or spouse of a patient entitled to receive future medical care and related benefits under LA-R.S. 40:1299.43 for providing nursing care and/or sitter care to the patient, regardless of the licensure or qualification of such family member, blood-relatives or spouse.
This matter was tried on March 19, 1992. On April 24, 1992, the trial court entered a judgment in favor of the plaintiffs. The court awarded Paul Bower, as tutor of Emily Bower, $257,500 in general damages. (This amount represents an award of $357,500, subject to a credit of $100,000 already paid by Schumpert.) Paul and Sharon Bower were each individually awarded $71,250 in damages for loss of consortium.
The trial court also awarded Paul and Sharon Bower recovery against the PCF for the past care which they had rendered to Emily and found that they were entitled to recover for future medical care, custodial care and related expenses.
In reasons for judgment, the trial court adopted the criteria set forth in Tanner v. Fireman's Fund Insurance Companies, 589 So.2d 507 (La.App. 1st Cir.1991), writ denied 590 So.2d 1207 (La.1992), in granting its award for gratuitous attendant care. Tanner held that the need for services must be shown, the reasonableness of the fee must be established and the extent and duration of the services must be proven. In the instant case, the trial court found that the Tanner criteria had been met. The court held that $9.00 per hour was a *603 reasonable fee for Sharon Bower's custodial care over and above the time she would ordinarily spend with the child. The court also found that a fee of $12.00 per hour was reasonable for the time Sharon Bower spent giving therapy to Emily. Based upon these figures, the trial court held that the plaintiffs were entitled to recover the amount of $198,234, to date, for care and therapy for Emily.
Further, the trial court granted a declaratory judgment in favor of the plaintiffs on the issue of their entitlement to payment for future custodial services rendered by Sharon Bower. The court stated that the plaintiffs would be entitled to recover for future custodial care for a period of one year. After that time, the court would have continuing jurisdiction to reevaluate the situation periodically according to the Tanner criteria and decide whether to continue the payments for care rendered by Sharon Bower.
The PCF appealed, objecting to the trial court judgment which requires payment for custodial care rendered to the child by Sharon Bower.

VALIDITY OF THE PATIENT COMPENSATION FUND RULE
The PCF contends that the above quoted rule which was adopted on March 5, 1992, is applicable to the facts of this case. The PCF contends that it is a quasi-administrative body with rule making authority similar to that of administrative agencies. Therefore, the PCF and the Oversight Board are entitled to adopt and promulgate rules, regulations and standards as they may deem necessary or advisable to implement the authority and discharge the responsibilities conferred and imposed upon them under the Medical Malpractice Act.
The PCF further asserts that its rules and regulations are subject to the same standard of review as those of an administrative agency and should be reviewed according to the standards set forth in the Administrative Procedure Act which require a reviewing court to first determine whether the rules, duly adopted and promulgated, were in violation of constitutional or statutory provisions, whether they were in excess of statutory authority of the agency, or whether they were affected by other error of law. Once it is determined that there is no direct violation of law or statute, the decision, rule or regulation of an agency may only be overturned where it is deemed to be arbitrary and capricious, or, in cases which involve a question of fact, where the decision or finding was manifestly erroneous in view of the evidence.
In the instant case, the PCF contends that the trial court erred in failing to review its rule regarding non-payment of relatives according to these standards and erred in failing to apply the rule to the facts of this case.
The rule at issue must be reviewed according to the Louisiana Administrative Procedure Act. In making that review, we find that the PCF has failed to follow the appropriate procedures set forth in that act for adopting and implementing rules. Therefore, the rule is invalid and not applicable to this case. LSA-R.S. 49:963(C) provides, "the court shall declare the rule invalid or inapplicable if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was adopted without substantial compliance with required rule making procedures."
LSA-R.S. 40:1299.44 establishes the Louisiana Patient's Compensation Fund and outlines its powers and duties. This statute also establishes the Patient's Compensation Fund Oversight Board, in the Office of the Governor.
LSA-R.S. 40:1299.44(D)(3) provides:
The board shall have authority, in accordance with applicable provisions of the Administrative Procedure Act, to adopt and promulgate such rules, regulations and standards as it may deem necessary or advisable to implement the authority and discharge the responsibilities conferred and imposed on the board by this Part. [Emphasis supplied]
*604 LSA-R.S. 49:951(6) of the Administrative Procedure Act, defines "rule" as follows:
"Rule" means each agency statement, guide, or requirement for conduct or action, exclusive of those regulating only the internal management of the agency and those purporting to adopt, increase, or decrease any fees imposed on the affairs, actions, or
persons regulated by the agency, which has general applicability and the effect of implementing or interpreting substantive law or policy, or which prescribes the procedure or practice requirements of the agency. "Rule" includes, but is not limited to, any provision for files, prices or penalties, the attainment or loss of preferential status, and the criteria or qualifications for licensure or certification by the agency. A rule may be of general applicability even though it may not apply to the entire state, provided its form is general and it is capable of being applied to every member of an identifiable class. The term includes the amendment or repeal of an existing rule but does not include declaratory rulings or orders or any fees.
The rule at issue here fits this definition as it is a "statement, guide, or requirement for conduct or action" and it does not regulate "only the internal management of the agency."
LSA-R.S. 49:953 sets forth extensive procedures to be followed for the adoption of rules. These procedures require notice of the intended action at least 90 days prior to taking action on the rule. All interested persons are to be afforded a reasonable opportunity to submit data, views or arguments. Further, LSA-R.S. 49:954(B) provides that each rule adopted shall be effective upon its publication in the Louisiana Register.
Judicial notice may be taken of rules of boards, commissions, and agencies of this state that have been duly published and promulgated in the Louisiana Register. LSA-C.E. Art 202(B)(b). In the present case, we do not find that the notice requirements were complied with nor do we find that this rule was ever promulgated in the Louisiana Register. The copy of the rule filed into evidence in this case appears to be a draft of a proposed rule. In fact, one section of the proposed rule, not applicable to this case, was left blank, to be filled in later by Ms. Pamela Deslatte, an employee of the Oversight Board. There are no documents indicating when it was approved, nor is there any written data in the record showing that it was, in fact, adopted. The only evidence indicating the date upon which this proposed rule was considered by the board was the testimony of Ms. Deslatte, and she produced no documentation concerning Board action.
Under these circumstances, we do not find that the rule relied upon in this case by the PCF was valid. Therefore, this rule cannot serve as authority for denying payment to the plaintiffs for custodial care and therapy rendered to Emily Bower by her mother, Sharon Bower. Because there is no valid rule, we do not reach the question of whether the trial court applied the proper standard in reviewing the rule and we do not reach the question of whether the Board was arbitrary and capricious in adopting such a rule.

AWARD FOR CUSTODIAL CARE
The PCF argues that the trial court erred in applying general tort principles to find that damages were due for nursing services provided gratuitously by family members. This argument is meritless.
Under LSA-R.S. 40:1299.43, once a settlement is reached or a judgment is entered in a medical malpractice case, the PCF is to provide for future medical care and related benefits. LSA-R.S. 40:1299.43(B)(1) defines "future medical care and related benefits" as "all reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services [including] drugs, prosthetic devices, and other similar materials reasonably necessary in the provision of such services after the date of the injury."
Under this mandate, the PCF does not object to providing the plaintiffs in this case with 24 hour professional custodial *605 care for Emily, whether rendered by sitters or nurses. However, the PCF strongly objects to payment to family members who render such services.
Pamela Deslatte of the Patient Compensation Fund testified for the defense. She stated that in choosing to refuse payment to family members, the PCF and the Oversight Board found that often, when family members exclusively undertake to provide care for a disabled family member, there is a great strain on relationships with other family members and the burden on the family often results in the patient not receiving the best care. The PCF also considered that if family members were paid to care for a patient and that care caused some other ailment or medical emergency, the PCF might be found liable.
The PCF argues that because it is not a tortfeasor, general tort principles allowing payment to family members for custodial care do not apply. We recognize that the PCF is not a tortfeasor but rather is similar to a statutory intervenor. Stuka v. Fleming, 561 So.2d 1371 (La.1990). We also recognize that the concerns of the PCF may be valid in some cases. However we agree with the trial court that in the absence of any legal prohibition to the contrary, the issue of payment to family members for care rendered to malpractice victims must be evaluated on a case by case basis.
Nothing in the statutes regulating the PCF and the Oversight Board prohibits payments to relatives, friends or family members for custodial care. The only authority cited to this court for denying such payments is the PCF Oversight Board rule which we have found to be invalid. Therefore, we find that the trial court did not err in looking to tort law for guidance in determining whether custodial care payments should be allowed for services rendered by the parents in this case.
In ordinary damage suits, the fact that medical attention and nursing services have been rendered gratuitously will not preclude the injured party from recovering the value of such services. Tanner v. Fireman's Fund Insurance Companies, supra; Bordelon v. Aetna Casualty and Surety Company, 494 So.2d 1283 (La.App. 2d Cir.1986); Williams v. Campbell, 185 So. 683 (La.App. 2d Cir.1938); Carpenter v. Hartford Fire Insurance Company, 537 So.2d 1283 (La.App. 2d Cir.1989).
However, a claim for nursing care rendered gratuitously by nonprofessional family members must be closely scrutinized. The need for services must be shown, the reasonableness of the fee must be established and the extent and duration of the services must be proven. Tanner v. Fireman's Fund Insurance Companies, supra.
In the instant case the trial court applied these factors and concluded that an award should be made for Sharon Bower's custodial care rendered to Emily since her birth to the present date.
The need for services and the extent and duration of those services in this case is not disputed. Emily Bower is totally incapable of caring for her physical needs in any way. She requires care 24 hours per day and will need such care for the remainder of her life. The reasonableness of the fees awarded by the trial court, $9.00 per hour for custodial care and $12.00 per hour for therapy, is not contested by the PCF. The fees appear to be reasonable. Therefore, the factors set forth in Tanner have been met by the plaintiffs.
Most importantly, all parties concede that excellent care has been rendered by Sharon Bower to this child. Mrs. Bower's efforts on behalf of her child are extraordinary and the benefits to the child are apparent. Emily has thrived under her mother's care, has learned to read and is attending public school only one grade level below that appropriate for her age. She is doing well academically and appears to be a happy, well-adjusted child, in spite of her enormous handicaps.
This assignment of error has no merit.

CONCLUSION
The Louisiana Patient Compensation Fund has not objected to that portion of the trial court judgment awarding general damages to the plaintiffs and awarding *606 past medical expenses. Therefore, these portions of the judgment are affirmed.
We also affirm the trial court judgment awarding $198,234 in past custodial care to the plaintiffs. We further affirm the remainder of the trial court judgment ordering the Louisiana Patient Compensation Fund to pay for future custodial care rendered by Sharon Bower to Emily Bower for a period of 12 months, maintaining continuing jurisdiction over the case to review future awards for custodial care.
All costs in this court and in the court below are assessed to the Louisiana Patient Compensation Fund.
AFFIRMED.
BROWN, J., concurs with written reasons.
BROWN, Judge, concurring.
The Patient Compensation Fund (PCF) and its Oversight Board may adopt and promulgate rules to implement its authority. The legislature granted the Oversight Board the responsibility to manage, administrate, operate and defend the fund. The legislature did not confer on the Oversight Board the authority to promulgate regulations that reduce or deny benefits provided for by statute. Thus, the Oversight Board exceeded its authority in the passage of the rule at issue.
Further, under the circumstances of this case the rule is arbitrary and capricious.