623 So.2d 1387 (1993)
Beverly EDWARDS, Individually and on Behalf of her Minor Child, Alexander Hale Lashley, Plaintiff-Appellant,
v.
ST. FRANCIS MEDICAL CENTER, et al., Defendants-Appellees.
No. 25105-CA.
Court of Appeal of Louisiana, Second Circuit.
September 22, 1993.
John W. deGravelles, Baton Rouge, for plaintiff-appellant.
Bruce A. Cranner, Metairie, for defendant-appellee.
*1388 Before MARVIN, LINDSAY and VICTORY, JJ.
VICTORY, Judge.
Appellants, William T. Edwards and Ruby Jeanette Edwards (collectively "Edwards"), are the grandparents and legal custodians of Alexander Lashley, a medical malpractice victim. In an earlier proceeding, the child's natural mother, Beverly Edwards, sued St. Francis Medical Center, the attending nurses, her obstetrician and their insurers. The subsequent settlement with the defendants contained a reservation of rights against the Louisiana Patient's Compensation Fund ("PCF") to determine excess damages. The Edwards appeal a trial court judgment in favor of the PCF denying the Edwards' motion to compel payment for medical, custodial and rehabilitative services which they render to Alexander. For the following reasons, we reverse the judgment of the trial court and render judgment in favor of the Edwards.

FACTS
During his birth, on May 30, 1987, Alexander Lashley suffered fetal distress resulting in severe brain damage. He has since been diagnosed with a seizure disorder, spastic quadriplegia, and cerebral palsy. He has no control over his body, cannot care for himself in any way and has no meaningful interaction with his environment. He requires constant care and supervision.
Since September 1988, Ruby Edwards and to a lesser extent, William Edwards, have cared for Alexander in their home. On a typical day, Mrs. Edwards dresses, spatula feeds and suctions the child as he is unable to swallow without assistance. The feeding technique requires that excess food particles be suctioned out in order to limit the amount of aspiration, a leading cause of the child's frequent bouts with pneumonia. Mrs. Edwards also daily administers medications, pulmonary aid treatments and percussion therapy. In addition to spending time with Alexander playing and listening to music, Mr. Edwards bathes the child and gives him physical therapy in the form of range of motion exercises. Twice a week, Mrs. Edwards takes Alexander to Ruston for physical, occupational, recreational and speech therapy.
The Edwards sought to recover for physical rehabilitation and custodial services rendered by them from the date of Alexander's birth, on May 30, 1987, through the date of trial. Mrs. Edwards requested that she be compensated at the rate of $25 per hour. Mr. Edwards requested that he be compensated at the rate of $15 per hour. The Edwards also sought to recover for future custodial and rehabilitative care to be rendered to the child.
The PCF objected to any award to the Edwards for past or future custodial care rendered by them. The PCF argued that guardians, just as parents, have a duty to care for their children during their minority, pursuant to LSA-C.C. Art. 227. Further, the PCF contended that it has been its policy, codified one day prior to trial in its "Future Medical Care Case Guidelines," to prohibit the payment to a patient's family, spouse, or household member for providing nursing care or custodial services. The PCF also argued at trial that the Edwards lacked standing, as the tutor or tutrix is the proper party to assert a claim on behalf of a minor. We note initially that Alexander's mother, Beverly Edwards, as tutrix of the minor child, was allowed to join with the Edwards in their demand for compensation for custodial care, without objection by the PCF. As such, the Edwards are properly before the court to assert their demands.
This matter was tried on February 7, 1992. On September 30, 1992, the trial court entered a judgment in favor of the PCF, finding that the Edwards were not entitled to recover for past and future custodial care.
In its reasons for judgment, the trial court adopted the criteria set forth in Tanner v. Fireman's Fund Insurance Companies, 589 So.2d 507 (La.App. 1st Cir.1991), writ denied 590 So.2d 1207 (La.1992). Tanner held that (1) the need for services must be shown, (2) the reasonableness of the fee must be established and (3) the extent and duration of the services must be proven.

*1389 DISCUSSION

Since the trial court's judgment, this court has addressed and resolved, in Bower v. Schumpert Medical Center, 618 So.2d 600 (La.App.2d Cir.1993), several of the issues raised by the parties on appeal. In Bower, supra, a factually similar case, we found to be invalid the PCF's rule prohibiting payment to medical malpractice victim's relatives for nursing care and custodial care, and that the three-prong Tanner test is the proper one to be applied in determining whether to allow payment for such services.
Under LSA-R.S. 40:1299.43, once a settlement is reached or a judgment is entered in a medical malpractice case, the PCF is to provide for future medical care and related benefits. LSA-R.S. 40:1299.43(B)(1) defines "future medical care and related benefits" as
all reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services [including] drugs, prosthetic devices, and other similar materials reasonably necessary in the provision of such services, after the date of the injury.
Nothing in the statutes regulating the PCF and its Oversight Board prohibits payments to relatives, friends or family members for custodial care. The only authority cited to this court for denying such payments is the PCF Oversight Board rule which we found to be invalid in Bower, supra.
In ordinary damage suits, the fact that medical attention and nursing services have been rendered gratuitously will not preclude the injured party from recovering the value of such services. Tanner v. Fireman's Fund Insurance Companies, supra; Carpenter v. Hartford Fire Insurance Company, 537 So.2d 1283 (La.App.2d Cir.1989); Bordelon v. Aetna Casualty and Surety Company, 494 So.2d 1283 (La.App.2d Cir.1986); Williams v. Campbell, 185 So. 683 (La. App.2d Cir.1938). However, a claim for nursing care rendered gratuitously by nonprofessional family members must be closely scrutinized. The need for services must be shown, the reasonableness of the fee must be established and the extent and duration of the services must be proven. Tanner v. Fireman's Fund Insurance Companies, supra.
In the instant case, the trial court applied the proper standard in determining whether custodial care payments should be allowed for services rendered, and concluded that an award should not be made for the care rendered to Alexander by the Edwards. It found that, although the appellants had proven that the child needs constant care, they did not demonstrate that the fees claimed were reasonable or prove the extent and duration of the services.
A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Nevertheless, when the court of appeal finds that a reversible error of law or manifest error of material fact was made in the trial court, it is required to determine the facts de novo from the entire record and render a judgment on the merits. Rosell v. ESCO, 549 So.2d 840 (La.1989); Collier v. Southern Builders, Inc., 606 So.2d 885 (La.App.2d Cir. 1992). Our review of the record leads us to conclude that the Edwards have offered sufficient proof to justify an award for care, though not at the rate or for the extent of time originally sought.

REASONABLENESS OF THE FEE AND EXTENT OF SERVICES
Mrs. Edward's claim for $25 per hour and Mr. Edward's claim for $15 per hour is not supported by the record. Patrice Delcambre, R.N., is the director of All Children's Health Care, an agency which has provided the services of licensed practical nurses (LPNs) to the family. She testified that the hourly rate for LPNs is $28 to $32 per hour gross, and $9.50 to $11.50 per hour net. Sherri Lofton, R.N. and the assistant administrator for Nursing PRN, testified that her company compensates its LPNs at the rate of $12 per hour. In her experience, sitters, who are not medically trained, can be hired for $5 hourly.
Mrs. Edwards, who is not a high school graduate, has no formal nursing training or training in the care of severely handicapped children. With the exception of a certificate issued by the Association of Retarded Citizens/Ouachita (ARC/O) for successful completion *1390 of CPR training, she has developed her caregiving methods by observing other health care professionals. Likewise, Mr. Edwards has no formal health care training and supplements Alexander's physical therapy by manually exercising his limbs, a technique only learned from observing trained physical therapists.
Dr. Howard Katz, Alexander's treating physician, offered the most recent assessment of the child's medical condition. Although he believed the grandparents to be competent and caring, he opined that they do not always make the right decisions with regard to Alexander's care. For example, Dr. Katz felt that, in order to limit the recurring bouts of pneumonia, spatula feeding should be discontinued. He recommended further evaluation and possible surgical implantation of a feeding tube. As of the trial date however, the grandparents had not followed this recommended course of action. Dr. Katz also disagreed with the grandparents' suctioning out of food not swallowed. In his opinion, this procedure resulted in more foreign material entering the lungs.
Without formal training or qualifications, the Edwards should not be compensated at the rate of other health care professionals. Although they are dedicated and caring, the services which they provide are more comparable to that of a sitter. Under these circumstances, we find $6 per hour to be an appropriate rate of compensation considering the level of care given and the modest informal training they have received.

DURATION OF SERVICES
In the motion to compel payment of medical expenses, Mrs. Edwards avers that for the period May 30, 1987 through August 31, 1988, she cared for Alexander for 72 hours per week totaling 4,968 hours. For the same period, Mr. Edwards claims that he spent 35 hours per week totaling 2,415 hours. There is no testimony or evidence of record however, detailing the scope and type of care provided. For this time period, we cannot say that the trial court was manifestly erroneous in declining to recompense the Edwards. Rosell v. ESCO, supra.
Mrs. Edwards claims that for the period September 1, 1988, through the date of trial, February 7, 1992, she has cared for Alexander for not less than 15 hours per day. For the same period, Mr. Edwards claims that he has provided not less than five hours of care per day. However, Mr. Edward's employment necessitates that he spend five-week periods out of town three to four times yearly, time periods not deducted from Mr. Edward's calculation of hours spent. In addition, documents submitted by the PCF indicate that extensive nursing and sitter services have already been provided by All Children's Health Care, Nursing PRN, Ruby Young, and other unspecified LPNs.
After September 1, 1988, when Alexander moved into the Edwards' home, the parties established a routine of care which, according to their testimony, has not varied barring the child's illness or hospitalization. Alexander usually arises at 6:00 a.m. and is bathed, dressed, fed and administered medications and breathing treatments. Since the middle of September 1991, Alexander has attended, five days a week, a non-categorical pre-school class in the Monroe City School System. An LPN provided by All Children's Health Care takes Alexander to school and stays with him during the day. Twice weekly the LPN accompanies Alexander to Ruston for the various therapy described above. In the evenings after school, the Edwards feed, medicate and play with Alexander until he retires for bed at approximately 8:00 p.m.
From this schedule, we conclude that approximately 15 hours of custodial care per day is required. This figure takes into account the time spent by the Edwards during the night administering to Alexander suctioning and other treatments as needed. Therefore, we will award compensation for 15 hours per day, with deductions for simultaneous professional nursing or sitter care evident from the record.
We have calculated the number of hours of professional care per day by averaging the cost of service over the time period indicated by the PCF's records. Those hours were then deducted from a 15-hour care period with the resulting hours credited to the Edwards. Where it could not be determined at what rate or for how many hours such care *1391 was provided, no allocation of time was made in favor of the Edwards. Unless it was evident that professional care was provided while Alexander was hospitalized, no deductions were made for these periods since it has already been established that the child requires constant supervision. Thus, we find that from September 1, 1988 through February 7, 1992, the Edwards are entitled to be compensated for 16,962.5 hours of care at a rate of $6 per hour. Therefore, the Edwards are entitled to recover the amount of $101,775.00 for past custodial care.[1]
We further order the Louisiana Patient's Compensation Fund, in accordance with the foregoing guidelines and restrictions, to pay, for a period of 12 months after February 7, 1992, future custodial and rehabilitative care to be rendered by Mr. and Mrs. Edwards upon their submission of claims for such compensation. The trial court will maintain continuing jurisdiction over the case to review future awards for custodial care.

DECREE
Based on the foregoing, we reverse the trial court's judgment and render judgment in favor of William T. and Ruby Jeanette Edwards against the Louisiana Patient's Compensation Fund in the amount of $101,775.00, plus legal interest from date of judicial demand until paid on $93,762.60, and from date of judgment on the remainder of $8,012.40.[2] We further order the Louisiana Patient's Compensation Fund, in accordance with the foregoing guidelines and restrictions, to pay, for a period of 12 months after February 7, 1992, future custodial and rehabilitative care to be rendered by Mr. and Mrs. Edwards upon their submission of claims for such compensation. Costs in the trial court and in this court are assessed to appellees.
REVERSED AND RENDERED.
NOTES
[1] Our ruling renders moot all other errors claimed by appellants.
[2] Our calculations show $93,762.60 was due when suit was filed.