871 So.2d 492 (2004)
Daphne LERAY, Glenn LeRay and Elaine LeRay
v.
Dr. Bradley J. BARTHOLOMEW, Jr., Dr. Stephen Mallernee, and Hospital Service District No. 1 of Terrebonne Parish, a/k/a Terrebonne General Hospital.
No. 03-CA-1370.
Court of Appeal of Louisiana, Fifth Circuit.
March 30, 2004.
*494 George E. Cain, Gary L. Hanes, Frilot, Partridge, Kohnke & Clements, L.C., New Orleans, LA, M. Keith Prudhomme, Thomas P. Leblanc, Lundy & Davis, L.L.P., Lake Charles, LA, for Intervenor/Appellant (Louisiana Patients' Compensation Fund).
Joseph A. Reilly, Jr., Stacy A. Lecompte, Carl T. Conrad, Henderson Reilly & Boudreaux, Houma, LA, for Defendant/Appellant (Dr. Bradley Bartholomew).
Darryl J. Carimi, Carimi Law Firm, Metairie, LA, Jerald P. Block, Matthew F. Block, Block Law Firm, Thibodaux, LA, for Plaintiffs/Appellants (Daphne LeRay, Glenn LeRay and Elaine LeRay).
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and WALTER J. ROTHSCHILD.
SOL GOTHARD, Judge.
This is an appeal by defendant, Dr. Bradley Bartholomew, and the Louisiana Patients' Compensation Fund (LPCF), from an adverse judgment after a jury trial on a medical malpractice claim.
This matter was begun with the filing of a petition for damages by Daphne LeRay and her parents, Glenn and Elaine LeRay, after a finding by the Medical Review Panel *495 that there was no breach of standard of care that constituted medical malpractice. The petition asserts that Daphne LeRay was injured in a traffic accident on October 15, 1995 and taken to Terrebonne General Medical Center (TGMC) for emergency treatment. The plaintiffs allege that the two treating physicians, Dr. Stephen Mallernee and Dr. Bradley J. Bartholomew, violated the standard of care and are liable in medical malpractice for causing Daphne's quadriplegia. In the original petition, plaintiffs name Dr. Mallernee, Dr. Bartholomew and TGMC as defendants. TGMC filed a declinatory exception of improper venue, arguing that it is properly referred to as "Hospital Service District No. 1 of the Parish of Terrebonne, State of Louisiana, the Owner and Operator of Terrebonne General Medical Center," a political subdivision of the State of Louisiana, domiciled in the Parish of Terrebonne, and as such must be sued in District Court of Terrebonne Parish. In a subsequent consent judgment the exception was granted and plaintiffs' claim against TGMC was transferred to the 32nd Judicial District Court, Parish of Terrebonne, State of Louisiana. The remainder of plaintiffs' claims against Dr. Mallernee and Dr. Bartholomew remained in the 24th Judicial District Court, Parish of Jefferson.
In a "First Amending and Supplemental Petition," plaintiffs alleged that the $500,000.00 cap for damages for injuries sustained as a result of medical malpractice pursuant to La. R.S. 40:1299 et seq. is unconstitutional. The LPCF filed an intervention defending the constitutional challenge to the medical malpractice statute made by plaintiffs, and a motion to sever trial of the issue of constitutionality.
After a trial on the merits, the jury rendered a decision finding medical malpractice by both doctors and assessing 10% of the fault to Dr. Mallernee and 90% to Dr. Bartholomew. The jury found in excess of $9,000,000.00 in damages. The jury findings were reduced to written judgment, and in accordance with La. R.S. 40:1299 et seq., each doctor was cast in judgment for $100,000.00. Further, the LPCF was cast in judgment for $300,000.00. The judgment also casts LPCF in judgment for the sum of $898,190.34 for future medical care and related benefits previously incurred, and authorizes Daphne LeRay to make a claim to the LPCF for all future medical care and related benefits directly or indirectly made necessary by the defendants' malpractice in accordance with La. R.S. 40:1299.43. Defendant doctors and the LPCF were cast in judgment for costs. The judgment further reserved plaintiffs' right to contest the constitutionality of La. R.S. 40:1299 et seq., and the judgment was designated as final and appealable by the trial court.
Dr. Mallernee filed a motion for a judgment notwithstanding the verdict, and Dr. Bartholomew filed a motion for a judgment notwithstanding the verdict, or in the alternative, a new trial. Both motions were denied by the trial court.
In a subsequent judgment costs, including court costs, expert witness fee, and medical records costs, were assessed at $119,195.89, divided according to percentages of fault between the two doctors.
The LPCF filed appeals from both the substantive judgment and the judgment taxing costs. Dr. Bartholomew filed a motion for new trial on the judgment taxing costs, which was denied. Dr. Bartholomew subsequently filed a motion for appeal on both judgments. Dr. Mallernee did not appeal.

FACTS
The record shows that Daphne LeRay, an eighteen-year-old college freshman, was *496 riding in a vehicle driven by Jamie Adams on the evening of October 15, 1995, when she was involved in a one-vehicle accident. The vehicle in which she was riding overturned, causing the roof to compress on the passenger side. Although Daphne was able to move all of her limbs, paramedics who arrived at the scene suspected she might have a cervical injury. Because of the dangerous situation, paramedics took extraordinary precautions to stabilize her cervical spine. They affixed a hard cervical collar and rigid long-spine board during the course of extracting Daphne from the vehicle. She was taken, fully restrained, by air ambulance to TGMC for emergency treatment. Medical personnel who attended Daphne described her as coming in and out of consciousness. Paramedics testified that while they attempted to strap her down and insert needles for intra-veineous fluids, she was resisting with strength in both arms and legs.
According to testimony which is undisputed, Daphne suffered a closed-head injury and three broken cervical bones as a result of the accident. At TGMC Daphne was immediately seen by Dr. Stephen Mallernee, the emergency room physician. Shortly thereafter, Dr. Bradley Bartholomew, a neurosurgeon, was attending Daphne as well. The doctors intubated her to guarantee the integrity of the airways and ordered diagnostic tests including a cross-table lateral x-ray and a CT scan of her head and abdomen. No CT scan of her cervical spine was ordered.
About two and one-half hours after she arrived at TGMC, Daphne was transferred to the intensive care unit (ICU). Although there is conflicting testimony about when the collar was actually removed, Daphne arrived in ICU without the restraint. Medical records show that defendant doctors had "cleared" her cervical spine of any instability, making the collar unnecessary.
She was exhibiting movement in all four extremities for at least fourteen hours after her arrival in ICU. Daphne was moving her head from side to side and attempting to get up. However, about fortyeight hours after the accident, her motion decreased and attending nurses called Dr. Bartholomew. He ordered a CT scan of Daphne's spine and found fractures at the C4, C5, and C6 levels. Dr. Bartholomew immediately modified his diagnosis to include "unstable spine" and reinstated the cervical collar and other restraints against body movement. Unfortunately for Daphne, the damage to the spinal cord had been done and a subsequent surgery to stabilize the area was unsuccessful in reversing any of the damage. As a consequence Daphne is characterized as a "motor non-functional incomplete quadriplegic" with no realistic prospect of improvement. Currently Daphne is confined to a wheelchair and has minimal control of her body below the C5 level.

LAW
Both Dr. Bartholomew and the LPCF filed a brief in this court arguing separate issues. However, neither appellant challenges the finding of malpractice. Therefore, that issue is not before us and will not be addressed in this opinion.
Dr. Bartholomew assigns three errors for our review, as follows:
(1) The trial court committed manifest error by rendering judgment against Dr. Bartholomew, an individual physician, as opposed to the Patients' Compensation Fund, for the taxation of costs incurred by the plaintiffs in this matter.
(2) The trial court committed manifest error by awarding costs related to those expenses incurred pre-offer of judgment by the plaintiffs.

*497 (3) The trial court committed manifest error and/or abuse of discretion in awarding the plaintiffs their expert fees related to expenses incurred in consultation which only assisted the plaintiffs' attorney in his preparation of preparing the matter for litigation.
The LPCF also assigns three errors for our review as follows:
(1) The trial court committed reversible error by failing to include Jamie Adams and Terrebonne General Medical Center as possible tortfeasors on the jury's verdict form in spite of evidence presented at trial that either or both of these entities were at least partially responsible for the plaintiff's injuries.
(2) The trial court committed reversible error by accepting the jury's finding of an award of past custodial care to the plaintiff based on 24-hour care for the preceding seven years despite uncontradicted evidence that the plaintiff has been able to function independently and without the need for constant supervision for significant periods of the day during that time.
(3) The trial court committed reversible error by making an assessment of costs pursuant to Article 970 of the Louisiana Code of Civil Procedure because such an assessment is not justified by the facts and relevant law. In the alternative, any award of costs under Article 970 should be the responsibility of the individual defendants and not the LPCF.
In a supplemental brief to this court, the LPCF assigns another error:
(1) The trial court lacked the necessary subject matter jurisdiction to make an award of past medical costs and related expenses to the plaintiffs, thus rendering that portion of the trial court's judgment null and without effect.
Because all three of Dr. Bartholomew's assignments and one of the LPCF's assignments relate to the assessment of costs pursuant to La. C.C.P. art. 970, we will begin with that issue. Both the LPCF and Dr. Bartholomew argue the trial court erred in awarding costs under article 970. Further, both parties argue in the alternative, that any assignment of costs this court validates pursuant to article 970 should be assessed to the other party. Therefore, we must decide whether the costs pursuant to article 970 were properly assessed and if so, whether they were properly assessed against both doctors and not against the LPCF.
La. C.C.P. art. 970 provides in pertinent part:
A. At any time more than thirty days before the time specified for the trial of the matter, without any admission of liability, any party may serve upon an adverse party an offer of judgment for the purpose of settling all of the claims between them. The offer of judgment shall be in writing and state that it is made under this Article; specify the total amount of money of the settlement offer; and specify whether that amount is inclusive or exclusive of costs, interest, attorney fees, and any other amount which may be awarded pursuant to statute or rule. Unless accepted, an offer of judgment shall remain confidential between the offeror and offeree. If the adverse party, within ten days after service, serves written notice that the offer is accepted, either party may move for judgment on the offer. The court shall grant such judgment on the motion of either party.

*498 B. An offer of judgment not accepted shall be deemed withdrawn and evidence of an offer of judgment shall not be admissible except in a proceeding to determine costs pursuant to this Article.
C. If the final judgment obtained by the plaintiff-offeree is at least twentyfive percent less than the amount of the offer of judgment made by the defendant-offeror or if the final judgment obtained against the defendant-offeree is at least twenty-five percent greater than the amount of the offer of judgment made by the plaintiff-offeror, the offeree must pay the offeror's costs, exclusive of attorney fees, incurred after the offer was made, as fixed by the court.
In Landry v. Leonard J. Chabert Medical Center, 02-1559 (La.App. 1 Cir. 5/14/03), 858 So.2d 454, writ denied 03-1748, 03-1752 (La.10/17/03), 855 So.2d 761, the First Circuit summarized the law as to the purpose of article 970. In Landry, the court stated:
The function of article 970 is to compensate the rejected offeror who was forced to incur greater trial litigation costs than he would have if the defendant had accepted his settlement offer. The article is punitive in nature and therefore must be strictly construed. (citations omitted)

Id., 858 So.2d at 466
The issue of whether article 970 can be applied in medical malpractice issues is one that has not been definitively decided to date. We note initially that, although La. R.S. 40:1299.41 et seq. generally restrict damages for malpractice to the $500,000.00 cap, there are provisions in the law for additional damages, including future medical care. As to the issue at hand, we note that La. R.S. 40:1299.42 B(1) provides:
The total amount recoverable for all malpractice claims for injuries to or death of a patient, exclusive of future medical care and related benefits as provided in R.S. 40:1299.43, shall not exceed five hundred thousand dollars plus interest and cost. (emphasis ours)
As previously stated the trial court rendered judgment assessing costs of litigation including court costs, expert fees and medical records totaling $119,195.89. The record shows that an offer to each defendant doctor to settle for $100,000.00 was made by the plaintiff on September 4, 2002. In the judgment, the trial court found "as a matter of fact that the Judgment rendered exceeded the Offer of Judgment dated September 4, 2002 by more than 25%." Neither party disputes the finding of fact that the offer was made and rejected, or that the amount of judgment exceeds the offer made by 25%.
Dr. Bartholomew argues that the trial court erred in casting the individual physicians in judgment for the costs, and in the alternative, the amounts awarded are excessive and/or unsubstantiated.
The LPCF argues the offer made by defendants to each defendant doctor of $100,000.00 was the maximum amount of their exposure. Therefore, there was no incentive to accept the offer and there was no unreasonableness in the rejection of the offer. The LPCF reasons that, because the provisions of article 970 are punitive, an element of unreasonableness in the rejection of the offer is implied. In the alternative, The LPCF argues any assessment of costs this court finds valid should be assessed to the defendant doctors individually and not against the LPCF.
The statute is clear that costs in amounts over the cap are permissible. While we are in agreement with LPCF's assertion that the provisions of article 970 are punitive and must be strictly construed, we are mindful also that the Medical *499 Malpractice Act's limitations on liability of qualified health care providers are special legislation in derogation of rights of tort victims. Pendleton v. Barrett, 95-2066 (La.5/31/96), 675 So.2d 720, overruled on other grounds by Graham v. Willis-Knighton Medical Center, 97-0188 (La.9/9/97), 699 So.2d 365. In Pendleton, the Supreme Court explained that, "(b)ecause the statute grants immunities or advantages to a special class in derogation of general rights, it must be strictly construed against limiting the tort claimant's rights against the wrongdoer." Id., 675 So.2d at 725.
The reasoning in Pendleton is supported by the legislative intent in enacting the Medical Malpractice Act and the general rule of law. After the Medical Malpractice Act was enacted in 1975, it was subjected to constitutional challenges. In upholding the constitutionality of the statute, the Supreme Court reviewed the legislative purpose of the act. In Everett v. Goldman, 359 So.2d 1256, 1261 (La.1978), the Supreme Court stated:
Prior to 1975, medical malpractice claims whether asserted in tort or contract were treated under our law much like other tort or contract claims. In that year, however, reacting to what it considered a crisis in the delivery of medical services to the people of this state, a crisis ostensibly prompted by prohibitive costs in connection with medical malpractice insurance, the state legislature passed several statutes which for simplicity we will refer to as the Medical Malpractice Act of 1975.
.............
The valid state purpose said to be served by the two provisions of the medical malpractice act before us is the lowering of the cost of health care generally and the assuring of available medical care for the citizens of the state.

Id., 359 So.2d at 1266
Having found the award of costs pursuant to La. C.C.P. article 970 was valid, we now turn to the issue of which defendant can be assessed with the cost. La. R.S. 40:1299.42 provides in pertinent part:
(2) A health care provider qualified under this Part is not liable for an amount in excess of one hundred thousand dollars plus interest thereon accruing after April 1, 1991, for all malpractice claims because of injuries to or death of any one patient.
We believe La. R.S. 40:1299.42 B is clear that the limitation of liability for a qualified health care provider is $100,000.00 plus interest. However, liability of LPCF is limited to $500,000.00 plus interest and cost. We find support for this position in Gladney v. Sneed, 32,107 (La.App. 2 Cir. 8/18/99), 742 So.2d 642, writ denied, 1999-2930 (La.1/14/00), 753 So.2d 215. In Gladney, the court ruled that the assessment of court costs could not be made against a qualified health care provider. While Gladney only concerned court costs and did not involve a taxation of costs pursuant to article 970, we believe the rational in Gladney holds true in the case before us, and we adopt its rational. Therefore, we find the trial court erred in taxing costs to Dr. Bartholomew, and we amend the judgment taxing costs pursuant to La. C.C.P. art. 970 to name only the LPCF.
Because we find merit in Dr. Bartholomew's argument that costs should not be assessed against qualified health care providers, we pretermit any discussion of the excessiveness of the amounts of the costs as raised by Dr. Bartholomew.
In two assignments of error, the LPCF argues that the trial court erred in its *500 award to plaintiffs for future medical expenses. In the initial assignment, the LPCF argues the award for custodial care to Daphne's mother, Elaine LeRay, as part of the award for "future medical care and related benefits, which have previously been incurred" is excessive. In a supplemental assignment of error, the LPCF argues that the trial court lacked subject matter jurisdiction to make any award for future medical and related expenses pursuant to La. R.S. 40:1299.43 B.
As previously stated, the jury found in excess of $9,000,000.00 in damages. Interrogatories show that the jury found the patient was in need of future medical care and related expenses. The jury findings also include medical expenses and related costs that were incurred between the time of the accident and the date of trial. Those costs include findings that Elaine LeRay is entitled to compensation for services rendered to her daughter in the amount of $368,000.00, and that Glenn LeRay is entitled to compensation in the amount of $46,000.00 for similar services.
In the written judgment that memorialized the findings of the jury, the trial court awarded $898,190.34 in "future medical care and related benefits, which have previously been incurred," including the amounts for payment to Elaine and Glenn LeRay for custodial care. The judgment also notes that the jury found Daphne to be:
.....in need of future medical care and related benefits, which pursuant to La. Rev.Stat. 40:1299.43, authorized and enables Daphne LeRay to make a claim to the patient's compensation fund through the board for all future medical care and related benefits directly or indirectly made necessary by the defendants' malpractice together with legal interest on said sum from the date of filing with the medical review panel or the date the expenses were incurred, whichever is later, until paid.
Although the jury interrogatories show a finding that these benefits exceed $8,000,000.00, no specific monetary award was made by the trial court in the final judgment.
We will consider the second argument made by the LPCF regarding the award of future medical damages first.[1] As we understand the LPCF's argument, the assertion is that the trial court is without jurisdiction to make an award of future medical expenses and related benefits in general. There is no distinction in the LPCF's argument between future medical benefits and related benefits already incurred, as the award for custodial care to Daphne's parents, and the declaration that Daphne is in need of medical care in the future, authorizing her to make claims to the LPCF for payment.
In support of its position, the LPCF cites Kelty v. Brumfield, 93-1142 (La.2/25/94), 633 So.2d 1210, rehearing denied, 93-1142 (La.3/25/94), 635 So.2d 247. The LPCF argues that the holding in Kelty is that the District Court lacks subject matter jurisdiction to make an initial adjudication of an award of medical expenses, and that the LPCF has exclusive jurisdiction over the initial determination of Section 43 costs. We find that the LPCF's reliance on Kelty v. Brumfield, supra is misplaced. We find Kelty to be clearly distinguishable. In Kelty the plaintiffs, parents of a child who suffered brain damage as a result of medical malpractice, did not get a certification of entitlement to *501 future medicals at the time of the judgment of malpractice. In three subsequent court proceedings, the plaintiffs moved the district court for a certification that the child is in need of future medical care. In the final proceeding, the trial court granted a defense exception of res judicata and the appellate court affirmed. The Supreme Court reversed after considering several matters of jurisdiction and res judicata. In the conclusion of the case, the Supreme Court found that plaintiff was a patient in need and entitled to receive compensation, and ordered the LPCF to accept and respond to claims made by plaintiffs.
It is also important to note that at the time of the plaintiffs' claim in Kelty, an earlier form La. R.S. 40:1299.43 existed, which did not allow benefits for future medical care and related benefits as it does in the current version. When the statute was amended by Act 435 of 1984, the legislature made it applicable to claims filed on or before September 1, 1984. Subsequently, the Supreme Court declared the restriction on retroactive application of the amendment that provided such coverage unconstitutional, and reformed Section 43 of the MMA to make it applicable to all "claims and litigation pending when it was passed." Williams v. Kushner, 549 So.2d 294, 297 (La.1989). Thus, plaintiff's in Kelty had to file an action after trial and settlement for the additional benefits.
As it applies to the case at bar, La. R.S. 40:1299.43 B (1) provides as follows:
"Future medical care and related benefits" for the purpose of this Section means all reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services and includes drugs, prosthetic devices, and other similar materials reasonably necessary in the provision of such services, after the date of the injury.
Further, La. R.S. 40:1299.43 A. (1) mandates that, in a medical malpractice trial the "jury shall be given a special interrogatory asking if the patient is in need of future medical care and related benefits and the amount thereof." (emphasis ours). La. R.S. 40:1299.43 D provides that:
Payments for medical care and related benefits shall be paid by the patient's compensation fund without regard to the five hundred thousand dollar limitation imposed in R.S. 40:1299.42.
La. R.S. 40:1299.43 C provides that:
Once a judgment is entered in favor of a patient who is found to be in need of future medical care and related benefits or a settlement is reached between a patient and the patient's compensation fund in which the provision of medical care and related benefits is agreed upon and continuing as long as medical or surgical attention is reasonably necessary, the patient may make a claim to the patient's compensation fund through the board for all future medical care and related benefits directly or indirectly made necessary by the health care provider's malpractice unless the patient refuses to allow them to be furnished.
Therefore, we believe the statutory structure intends for the trier of fact to determine an amount for compensable damages for future medical expenses pursuant to the Medical Malpractice Act, which are then administered by the Oversight Board of the LPCF. Support for this position can be found in Supreme Court cases which examine Section 43, including Kelty. In Kelty, supra, 633 So.2d at 1217, the court explained the claim for future medical benefits in the Medical Malpractice Act is a "special statutory creation inherently different from a general tort law claim for money judgment for damages."
*502 In Hall v. Brookshire Bros., LTD, 02-2404, 02-2421 (La.6/27/03), 848 So.2d 559, the jury awarded a medical malpractice plaintiff $35,251.43 for past medical expenses and made a determination that she was in need of future medical care assessed at a cost of $3,862,835.00. In considering the issue of interest due on the award, the Supreme Court explained that interest on that portion of the judgment for past medical expenses was due, because the award represented "`future' medical expenses that have already been incurred." Id., 848 So.2d at 576. However, since the award for future medical care represented expenses not yet incurred, no interest was due. Id.
In Coleman v. Deno, 99-2998 (La.App. 4 Cir. 11/6/02), 832 So.2d 1016, writ denied, 03-166, 03-167, 03-168 (La.9/19/03), 853 So.2d 635, the Fourth Circuit, on remand from the Supreme Court on other issues, did not find that a jury finding of $500,000.00 for future medical expenses in a Medical Malpractice case was excessive. The court also noted that the affirmation of a jury finding that a patient is in need of future medical expenses triggers the applicability of La. R.S. 40:1299.43(C). Id., 832 So.2d at 1030.
In the instant case the interrogatories sent to the jury were proper under the statute, and the finding that the plaintiff is in need of future medical care and related benefits pursuant to La. 40:1299.43 was noted correctly in the final judgment that memorialized the jury findings. The judgment further authorizes plaintiffs to make claims for such expenses to the LPCF, without entering a judgment on the exact sum. The only money judgment related to this issue is the award of $898,190.34 for medical expenses and related benefits already incurred. The trial court correctly made the distinction between medical expenses and related benefits incurred between the accident and the date of trial, and future medical expenses which will occur after trial. In recognizing this difference, the trial court correctly reduced the past medical expenses to a money judgment, but merely acknowledged the right of plaintiffs to bring a claim for any future medical expenses to the LPCF. We find that to be correct and within the trial court's grant of jurisdiction. Therefore, we find no merit in the LPCF's argument that the trial court was without jurisdiction to send the question of need for future medical expenses and the amount to the jury, and in reducing the jury finding to a written judgment.
We will now consider the LPCF's argument that a portion of the amount awarded in the final judgment is excessive. The argument on this issue is restricted to that portion of the judgment which awards funds for related expenses already incurred. Specifically, the jury determination that Daphne's mother, Elaine LeRay, should be awarded $368,000.00 in compensation for custodial care rendered to her daughter in the seven years between the accident and the trial is at issue. The LPCF asserts that the award was calculated on a rate of $6.00 per hour for twentyfour hour care during the time period. The LPCF argues that the amount is excessive in view of the fact that Daphne's father, Glenn LeRay, was also awarded $46,000.00 for custodial care, which amounts to a $6.00 per hour rate for three hours a day. The LPCF maintains that the parents are non-professional caretakers and must show a need for the services, establish the reasonableness of the fee, and prove the duration of the care. The LPCF suggests that a more appropriate amount for compensation to Elaine LeRay is $245,280.00, calculated by reimbursement for only sixteen hours a day at the rate of $6.00 per hour.
*503 In Bower v. Schumpert Medical Center, 618 So.2d 600 (La.App. 2 Cir.1993), the Second Circuit considered a LPCF's rule prohibiting payments to relatives of patients for nursing care and custodial care provided to a patient, and found it invalid. In Bower, the parents of a daughter who suffered from cerebral palsy, spastic quadriplegia and seizure disorder as a result of neonatal asphyzia, filed an action under the Medical Malpractice Act. After a settlement with one qualified provider and dismissal of the other, the LPCF was added to the lawsuit. After a trial on the merits, the trial court entered judgment in favor of plaintiffs awarding recovery for past care which they rendered to their daughter and found they were entitled to future care benefits. The court found that Mrs. Bower was entitled to $9.00 per hour for regular custodial care and $12.00 an hour for the hours she spent giving her child therapy. The total award for this care amounted to $198,234.00.
On appeal the LPCF argued that its rule prohibiting payment to family members for custodial care prohibited recovery. The Second Circuit disagreed and found that the rule promulgated by the LPCF was invalid and could not be used as authority to bar recovery. The court further found that general tort principles apply even though the LPCF is not a tortfeasor, and ruled that the issue of payment to family members in medical malpractice matters must be considered on a case by case basis. Thus, the court used general tort law which allows a plaintiff to be compensated for medical attention and nursing services rendered gratuitously. Id., 618 So.2d at 605. In so doing the Bower court cautioned that a claim for nursing services rendered gratuitously by nonprofessional family members must be closely scrutinized as to the need for the services, the reasonableness of the fee and the extent and duration of the services. Id. (citing Tanner v. Fireman's Fund Insurance Companies, supra, 589 So.2d 507 (La.App. 1 Cir.1991), writ denied 590 So.2d 1207 (La.1992)).
After reviewing the facts using the above criteria, the Bower court found that the rates paid and the hours compensated were reasonable, and the need for the services, and the extent and duration were not disputed. The award was affirmed.
In the instant case, the LPCF admits that there is medical testimony from Dr. Todd Cowen, the physician in charge of plaintiff's rehabilitation, to show that Daphne is in need of twenty-four hour a day care. However, the LPCF argues that other testimony and evidence show that Daphne is able to drive a speciallyequipped van and leave the house alone for social events. In conclusion, the LPCF argues that a more appropriate award for custodial care rendered to Daphne by her mother is $245,280.00 representing sixteen hours a day.
The record shows that Daphne's injury is classified as a "C5 quadriplegia". Everything below that level was affected. She has only limited movement of her upper arms and is confined to a wheel chair permanently. She suffers from a loss of bowel and bladder control. According to expert testimony, Daphne is unable to perform basic functions. She cannot prepare her own food or dress herself. She can turn herself over onto one side only if she has a bed railing close by, but cannot turn over on the other side. She is unable to move enough to get up from a reclining position and must wait until someone moves her. She can only be left in a sitting position unattended for a short period of time, because she cannot right herself if she falls over. She must be placed in her wheelchair and strapped in by someone else. She is unable to move *504 from her wheelchair by herself. While it is true that she is able to attend classes on her own, her mother must be on twentyhour call for emergencies. Daphne must use a catheter, which she can insert by herself if she has help laying down and getting up again.
The jury viewed a video tape showing Daphne in her wheelchair attempting to perform basic functions. The tape shows what daily life is like for Daphne and the jury was able to see firsthand how necessary is her mother's care.
The standard of review of damages awarded by a jury is manifest error/abuse of discretion. As recently summarized by the Third Circuit in Hall v. Brookshire Bros., Ltd., 831 So.2d at 1026, decision affirmed by, 2002-2404, 2002-2421 (La.6/27/03), 848 So.2d 559:
Damages for loss of earning capacity and for past and future medical expenses are special damages. They can be established to a reasonable mathematical certainty or with relative certainty. Wainwright v. Fontenot, 00-492 (La.10/17/00); 774 So.2d 70; Whitehead v. Kansas City S. Ry. Co.[,] 99-896 (La. App. 3 Cir. 12/22/99); 758 So.2d 211, writ denied, 00-0209 (La.4/7/00); 759 So.2d 767. "The discretion afforded the trier of fact to assess special damages is narrower or more limited than the discretion to assess general damages." Eddy v. Litton, 586 So.2d 670, 675 (La. App. 2d Cir.1991), writ denied, 590 So.2d 1203 (La.1992). Such damages are, however, still subject to the abuse of discretion standard of review. Wainwright, 774 So.2d 70.
Using the above standard, we cannot find the jury abused its discretion in the award of special damages to Elaine LeRay for reimbursement of custodial care rendered to her daughter.
In the final assignment for our review, the LPCF argues the trial court committed reversible error in refusing to include Jamie Adams, the driver of the vehicle in which Daphne was injured, and TGMC as possible tortfeasors on the jury verdict form. At trial defendants objected to the proposed verdict form to be presented to the jury on the basis that it did not allow the jury to assess any fault as it relates to the driver of the vehicle in which Daphne was injured, or the hospital to which she was taken. After consideration the trial court stated, "I did not find from the evidence presented that there was any testimony from either side, in my opinion, whereby these parties were shown to be at fault. There was just no evidence."
La. C.C. art. 2323 A provides as follows:
In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
Recently, in Hall v. Brookshire Bros., LTD., 2002-2404, 2002-2421 (La.6/27/03), 848 So.2d 559, our Supreme Court considered the propriety of quantifying victim *505 and third-party fault in suits against the LPCF. The Hall court explained[2]:
Louisiana Civil Code article 2323 requires that the fault of every person responsible for a plaintiff's injuries be compared, whether or not they are parties, regardless of the legal theory of liability asserted. As we explained in Dumas v. State, Department of Culture, Recreation & Tourism, XXXX-XXXX (La.10/15/02), 828 So.2d 530, 537: "The comparative fault article, La. C.C. art. 2323, makes no exceptions for liability based on medical malpractice; on the contrary, it clearly applies to any claim asserted under any theory of liability, regardless of the basis of liability." Thus, in the trial against the Fund, wherein the plaintiff retains the burden of proving that the admitted malpractice caused damages in excess of $100,000.00, evidence that victim or third party fault caused any of the damages is clearly relevant and admissible.
(some citations and footnotes omitted)

Id., 848 So.2d at 567-568
Accordingly, we find that evidence of fault on the part of the driver of the vehicle and the hospital to which Daphne was taken is clearly admissible under general principles of law. However, in the matter before us, the admission of evidence of third-party fault is not at issue. The issue for our review is whether the trial court should have allowed the jury to decide if, based on the evidence presented at trial, there was fault on the part of the driver and the hospital.
La. C.C.P. art. 1813 provides in pertinent part:
A. The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict.
B. The court shall inform the parties within a reasonable time prior to their arguments to the jury of the general verdict form and instructions it intends to submit to the jury, and the parties shall be given a reasonable opportunity to make objections.
The trial court submitted interrogatories to the jury on questions of liability and apportionment of damages as it relates to the two doctors, but refused a request to include questions on the possible liability of third-party tortfeasors, because it found no evidence of any fault on the part of the driver of the vehicle or TGMC was presented at trial. Because third-party fault is an issue properly before the court in this case, and evidence of such is admissible, we find the jury should have been allowed to weigh the evidence admitted at trial and decide the issue. The problem is further compounded because the jury was not instructed on the allocation of fault in accordance with La. C.C. art. 2323.
The proper standard for appellate review of questions of law is simply whether the court's interpretive decision is legally correct. If the trial court's decision was based on its erroneous interpretation or application of law, rather than a valid exercise of discretion, such an incorrect decision is not entitled to deference by the reviewing court. Franklin Southland Printing Co., Inc. v. New Orleans, 99-60 *506 (La.App. 5 Cir. 7/27/99), 739 So.2d 977 (citing National Tea Co. v. Plymouth Rubber Co., 95-254 (La.App. 5 Cir. 10/18/95), 663 So.2d 801).
The allocation of fault in accordance with La. C.C. art. 2323 is a question of fact within the purview of the jury. Therefore, we find the trial court erred as a matter of law by ruling on the issue of third-party fault and keeping the issue from the jury. Anderson v. May, 01-1031 (La.App. 5 Cir. 2/13/02), 812 So.2d 81. "Where one or more trial court legal errors interdict the fact finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the reviewing court should make its own independent de novo review and assessment of the record." Campo v. Correa, 01-2707 (La.2002), 828 So.2d 502, 510.
In Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985), the Supreme Court explained:
In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.

Id., 469 So.2d at 974
The undisputed facts are that Daphne sustained three broken cervical bones in a one-vehicle accident while riding in a truck driven by Jamie Adams. She was taken to TGMC after the accident. Plaintiffs acknowledged that a separate action against Mr. Adams, the manufacturer of the truck, and the Louisiana Department of Transportation has been filed in Terrebonne Parish. It is also clear from the record that TGMC was severed from this action and further proceedings are pending in that matter in a separate venue.
Plaintiff admitted at the beginning of trial that Daphne was injured in the accident and taken to TGMC for treatment. Plaintiff also made it clear to the jury that they were only to assess damages for the quadriplegia. Because of that restriction, plaintiff did not introduce evidence of negligence on the part of Mr. Adams.
Defendants did present medical testimony to make a causal link between the accident and the injury sustained. However, to find liability under the dutyrisk a party must also prove that the defendant owed a duty of care to plaintiff, the requisite duty was breached by the defendant, and the risk of harm was within the scope of protection afforded by the duty breached. Clayton v. Illinois Central R. Co., 03-972 (La.App. 5 Cir. 1/27/04), 865 So.2d 896.
As to Mr. Adams, the driver of the vehicle in which Daphne was riding, we find insufficient evidence presented at this trial to impose liability and assess fault. While the record shows that no other vehicle was involved in the accident, no cause for the accident has been shown. There was testimony concerning the condition of *507 the vehicle after the accident. However, there was no testimony by accident investigators or possible witnesses to show the circumstances of the accident. Such factors as speed, road conditions, and attentiveness and condition of the driver were not examined. Under these circumstances, we cannot find a breach of duty necessary to assess liability or apportion fault to Mr. Adams.
As to TGMC, the LPCF argues that the treatment of nurses at TGMC fell below the customary standard. There is testimony from plaintiffs' witness, Dr. Gary Harris, in which he questions the documentation of the attending nurses. Specifically, Dr. Harris stated that he did not believe the concerns for Daphne were documented as aggressively as possible. He also stated that he felt the nurses were inexperienced and did not stand up to the doctors to see that Daphne got the necessary care to prevent her paralysis. However, there is no showing of the appropriate standard of care for attending nurses.
It is well established that a hospital can be held responsible for the negligence of its employees under the doctrine of respondeat superior. Under this theory, the same standard of care and burden of proof for the physician or nurse whose activities are questioned are appropriate. Estate of Wilburn v. Leggio, 36,534 (La. App. 2 Cir. 3/19/03), 842 So.2d 1175, writ denied, 03-1096 (La.6/6/03), 845 So.2d 1095. The burden of proof of medical malpractice as set forth in La. R.S. 9:2794 requires a showing that the medical treatment fell below the ordinary standard of care expected of physicians in that field of medical care, and a causal relationship between the injury and the alleged negligent treatment.
There is no showing of the ordinary standard of care, and except for the above mentioned testimony, no showing of negligence on the part of the attending nurses. Further, there is no showing of the ordinary procedure or the responsibility delineations between the attending physicians and the attending nurses. Accordingly, we find insufficient evidence presented at this trial to assess liability against TGMC.
In conclusion, we find that, while the factual finding of the trial court was correct that there is insufficient evidence presented at this trial to meet the burden of proof for a finding of liability for Daphne's damages against Mr. Adams or TGMC, we find that it was error to keep this finding of fact from the jury. Consequently, we find the error made by the trial court in this regard is harmless.
For the foregoing reasons, we amend the judgment of the trial court rendered on November 18, 2002 to exclude Dr. Stephen Mallernee and Dr. Bradley J. Bartholomew from that part of the judgment which taxed defendants for all court costs incurred in this matter and affirm the judgment as amended. In the judgment of the trial court of December 19, 2002 we reverse the portion of the judgment which casts Dr. Bradley J. Bartholomew and Dr. Stephen Mallernee in judgment for costs and hold that the Louisiana Patient's Compensation Fund is solely responsible for payment of costs awarded in this judgment, and affirm the remainder of the judgment.
JUDGMENTS AMENDED AND AS AMENDED, AFFIRMED.
NOTES
[1] In connection with a supplemental brief on this issue, plaintiff has filed a motion to declare La. R.S. 40:1299.43 unconstitutional. We refused that motion for lack of jurisdiction in a separate ruling.
[2] Although the Hall case involved an admission of liability on the part of the defendant doctors, the rational used in Hall is applicable in the instant case as well.